# Illinois Official Reports

## Supreme Court

---

**People v. Buffer, 2019 IL 122327**

---

| | |
|---|---|
| Caption in Supreme Court: | THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. DIMITRI BUFFER, Appellee. |
| Docket No. | 122327 |
| Filed | April 18, 2019 |
| Decision Under Review | Appeal from the Appellate Court for the First District; heard in that court on appeal from the Circuit Court of Cook County, the Hon. Thaddeus Wilson, Judge, presiding. |
| Judgment | Appellate court judgment affirmed. <br> Sentence vacated. <br> Cause remanded with directions. |
| Counsel on Appeal | Lisa Madigan, Attorney General, of Springfield (David L. Franklin, Solicitor General, and Michael M. Glick and Gopi Kashyap, Assistant Attorneys General, of Chicago, of counsel), for the People. <br><br> James E. Chadd, State Appellate Defender, Patricia Mysza, Deputy Defender, and Christopher L. Gehrke, Assistant Appellate Defender, of the Office of the State Appellate Defender, of Chicago, for appellee. |

John Marshall Law School, *Pro Bono* Program & Clinic, of Chicago (J. Damian Ortiz, of counsel, and Cheryl Kamide, Margaret Shadid, and Marlee Turim, law students), *amicus curiae.*

Bluhm Legal Clinic, Northwestern Pritzker School of Law, of Chicago (Shobha L. Mahadev and Scott F. Main, of counsel, and Sarah Aagard and Kristen Froese, law students), for *amici curiae* Children and Family Justice Center *et al.*

|  |  |
|---|---|
| Justices | JUSTICE NEVILLE delivered the judgment of the court, with opinion. |
|  | Chief Justice Karmeier and Justices Thomas, Kilbride, Garman, and Theis, concurred in the judgment and opinion. |
|  | Justice Burke specially concurred, with opinion. |

## OPINION

¶ 1     Defendant, Dimitri Buffer, filed a *pro se* postconviction petition pursuant to the Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2014)). Defendant asserted that his 50-year prison sentence, imposed for a crime he committed when he was 16 years old, was unconstitutional as applied to him. The circuit court of Cook County summarily dismissed the petition. The appellate court reversed the dismissal, holding that defendant's sentence, imposed without consideration of his youth and its attendant characteristics, violated the eighth amendment to the United States Constitution (U.S. Const., amend. VIII). The appellate court vacated defendant's sentence and remanded the case to the circuit court for resentencing. 2017 IL App (1st) 142931.

¶ 2     This court allowed the State's petition for leave to appeal. Ill. S. Ct. R. 315 (eff. July 1, 2017). We now affirm the judgment of the appellate court, but on different grounds, and remand the cause to the circuit court for resentencing in accordance with section 5-4.5-105 of the Unified Code of Corrections (730 ILCS 5/5-4.5-105 (West 2016)).

¶ 3                                    I. BACKGROUND

¶ 4     The appellate court has previously recited the details of defendant's conviction and sentence. Therefore, we discuss only those facts and the procedural history that are pertinent to the issues raised in this appeal.

¶ 5     A jury found defendant guilty of four counts of first degree murder (720 ILCS 5/9-1(a)(1), (a)(2) (West 2008)) and specifically found that defendant personally discharged a firearm that caused the victim's death. Defendant was sentenced in July 2010. At that time, Illinois law prescribed a sentencing range of 20 to 60 years for first degree murder (730 ILCS 5/5-4.5-20(a) (West 2008)) and mandated a minimum 25-year additional prison term for personally

discharging a firearm that caused the victim's death (*id.* § 5-8-1(a)(1)(d)(iii)). The circuit court stated that it had "considered all of the relevant statutory requirements *** including but not limited to" the evidence at trial, the gravity of the offense, the presentence investigation report, to a limited extent the financial impact of incarceration, given defendant's age and his lack of children or dependents, the evidence in aggravation and mitigation, potential substance abuse issues, treatment, the potential for rehabilitation, the possibility of alternative sentencing, defendant's statement in allocution, the victim impact statement, and all hearsay at the sentencing hearing deemed relevant and reliable. The court merged the first degree murder counts and sentenced defendant to 25 years on the first degree murder conviction and 25 years for the mandatory firearm add-on, for an aggregate sentence of 50 years, followed by 3 years of mandatory supervised release.

¶ 6 Defendant timely appealed. In June 2012, while defendant's direct appeal was pending, the United States Supreme Court decided *Miller v. Alabama*, 567 U.S. 460 (2012), which held that imposing on a juvenile offender a mandatory sentence of life without the possibility of parole, without consideration of the defendant's youth and its attendant characteristics, violated the eighth amendment. Defendant filed a motion seeking leave to file a supplemental brief addressing the applicability of *Miller* to his 50-year sentence. The State objected, and the appellate court denied defendant leave to file the supplemental brief. The appellate court affirmed defendant's conviction and sentence. *People v. Buffer*, 2012 IL App (1st) 102411-U, *leave to appeal denied*, No. 115148 (Ill. Jan. 30, 2013). In March 2014, this court held that *Miller* applied retroactively to cases on collateral review. *People v. Davis*, 2014 IL 115595.

¶ 7 In May 2014, defendant filed the instant *pro se* postconviction petition in the circuit court. Relying on *Miller*, defendant argued that his 50-year sentence, imposed for a crime committed when he was a juvenile, violated the eighth amendment because it constituted a *de facto* life sentence. Defendant requested that the circuit court vacate his sentence and conduct a new sentencing hearing. On August 8, 2014, the circuit court summarily dismissed defendant's postconviction petition as frivolous and patently without merit.

¶ 8 On September 5, 2014, defendant filed a notice of appeal from the circuit court's summary dismissal of his postconviction petition. While defendant's appeal was pending, the United States Supreme Court decided *Montgomery v. Louisiana*, 577 U.S. ___, 136 S. Ct. 718 (2016), and agreed with the conclusion we reached in *Davis* that *Miller* applied retroactively to cases on collateral review. *Id.* at ___, ___, 136 S. Ct. at 729, 736. Also during the pendency of defendant's appeal, this court decided *People v. Reyes*, 2016 IL 119271 (*per curiam*), and extended *Miller*'s holding barring juveniles from mandatory natural life sentences to include mandatory *de facto* life sentences. *Id.* ¶ 9.

¶ 9 The appellate court reversed the summary dismissal of defendant's postconviction petition. 2017 IL App (1st) 142931. The appellate court concluded that, (1) pursuant to *Reyes*, defendant's 50-year sentence was a mandatory *de facto* life sentence and (2) the circuit court failed to consider defendant's youth and its attendant characteristics in imposing sentence. Therefore, defendant's sentence violated the eighth amendment. *Id.* ¶¶ 63-64. The appellate court vacated defendant's sentence and remanded his case to the circuit court for resentencing under the juvenile sentencing statute (730 ILCS 5/5-4.5-105 (West 2016)). 2017 IL App (1st) 142931, ¶¶ 67-69.

¶ 10    The State appeals to this court. We granted the John Marshall Law School's *Pro Bono* Program & Clinic, and the Children and Family Justice Center *et al.*, leave to submit *amicus curiae* briefs in support of defendant. Ill. S. Ct. R. 345 (eff. Sept. 20, 2010).

¶ 11                                    II. ANALYSIS

¶ 12    This case comes before us in the context of a postconviction proceeding. The Post-Conviction Hearing Act provides a procedural mechanism through which criminal defendants can assert that their federal or state constitutional rights were substantially violated in their original trials or sentencing hearings. 725 ILCS 5/122-1(a) (West 2014). A postconviction proceeding is not a substitute for a direct appeal but rather is a collateral attack on a prior conviction and sentence. The purpose of the proceeding is to allow inquiry into constitutional issues involved in the original conviction and sentence that have not been, and could not have been, adjudicated previously on direct appeal. *People v. Harris*, 224 Ill. 2d 115, 124 (2007); *People v. Peeples*, 205 Ill. 2d 480, 509-10 (2002). Review of the circuit court's dismissal of a postconviction petition is *de novo*. *People v. Hodges*, 234 Ill. 2d 1, 9 (2009) (collecting cases).

¶ 13                              A. The Eighth Amendment

¶ 14    The State assigns error to the appellate court's holding that defendant's 50-year prison sentence violated the eighth amendment. The State contends that defendant's sentence is constitutional as applied to him.

¶ 15    The eighth amendment prohibits, *inter alia*, "cruel and unusual punishments" (U.S. Const., amend. VIII) and applies to the states through the fourteenth amendment. *Roper v. Simmons*, 543 U.S. 551, 560 (2005) (collecting cases). "Inherent in that prohibition is the concept of proportionality." *People v. Holman*, 2017 IL 120655, ¶ 33 (citing *Graham v. Florida*, 560 U.S. 48, 59 (2010)). The eighth amendment's ban of excessive punishment flows from the basic precept that criminal punishment should be graduated and proportioned both to the offender and the offense. *Miller*, 567 U.S. at 469; *Roper*, 543 U.S. at 560; *People v. Davis*, 2014 IL 115595, ¶ 18. A claim that punishment is constitutionally excessive is judged not by the standards of the past "but rather by those that currently prevail." *Atkins v. Virginia*, 536 U.S. 304, 311 (2002). The United States Supreme Court has repeatedly instructed courts to look beyond history to "the evolving standards of decency that mark the progress of a maturing society" (*Trop v. Dulles*, 356 U.S. 86, 101 (1958) (plurality opinion)) to determine whether a punishment is so disproportionate as to be cruel and unusual. See *Miller*, 567 U.S. at 469; *Graham*, 560 U.S. at 58; *Roper*, 543 U.S. at 561; see also *Davis*, 2014 IL 115595, ¶ 18.

¶ 16    The United States Supreme Court has held that the eighth amendment prohibits capital sentences for juveniles who commit murder (*Roper*, 543 U.S. at 578-79), mandatory life sentences for juveniles who commit nonhomicide offenses (*Graham*, 560 U.S. at 82), and mandatory life sentences for juveniles who commit murder (*Miller*, 567 U.S. at 489). *Roper*, *Graham*, and *Miller* established that "children are constitutionally different from adults for purposes of sentencing." *Id.* at 471. The Court recognized three significant characteristics of juvenile offenders. First, juveniles lack maturity and a fully developed sense of responsibility, which leads to dangerous behavior that is careless, impulsive, and reckless. Second, juveniles are more vulnerable to negative influences and outside pressures, they have limited control over their own environment, and they lack the ability to extricate themselves from crime-

- 4 -

producing settings. Third, juveniles are more capable of change than adults, and their actions are less likely to be evidence of irretrievable depravity. *Id.* (citing *Roper*, 543 U.S. at 569-70). Further, none of this analysis regarding "children—about their distinctive (and transitory) mental traits and environmental vulnerabilities—is crime-specific." *Id.* at 473.

¶ 17    "Because juveniles have diminished culpability and greater prospects for reform, \*\*\* 'they are less deserving of the most severe punishments.' " *Id.* at 471 (quoting *Graham*, 560 U.S. at 68). *Roper*, *Graham*, and *Miller* emphasize "that the distinctive attributes of youth diminish the penological justifications for imposing the harshest sentences on juvenile offenders, even when they commit terrible crimes." *Id.* at 472.

¶ 18    *Graham* and *Miller* insist that "youth matters in determining the appropriateness of a lifetime of incarceration without the possibility of parole. \*\*\* [T]he characteristics of youth, and the way they weaken rationales for punishment, can render a life-without-parole sentence disproportionate." *Id.* at 473. The mandatory penalty schemes in *Miller* prevented "the sentencer from taking account of these central considerations. By removing youth from the balance—by subjecting a juvenile to the same life-without-parole sentence applicable to an adult—[those] laws prohibit[ed] a sentencing authority from assessing whether the law's harshest term of imprisonment proportionately punishes a juvenile offender." *Id.* at 474. This contravenes the foundational principle "that imposition of a State's most severe penalties on juvenile offenders cannot proceed as though they were not children." *Id.*

¶ 19    The Court discussed some attendant characteristics of youth as follows:

"To recap: Mandatory life without parole for a juvenile precludes consideration of his chronological age and its hallmark features—among them, immaturity, impetuosity, and failure to appreciate risks and consequences. It prevents taking into account the family and home environment that surrounds him—and from which he cannot usually extricate himself—no matter how brutal or dysfunctional. It neglects the circumstances of the homicide offense, including the extent of his participation in the conduct and the way familial and peer pressure may have affected him. Indeed, it ignores that he might have been charged and convicted of a lesser offense if not for incompetencies associated with youth—for example, his inability to deal with police officers or prosecutors (including on a plea agreement) or his incapacity to assist his own attorneys. [Citations.] And finally, this mandatory punishment disregards the possibility of rehabilitation even when the circumstances most suggest it." *Id.* at 477-78.

¶ 20    The Court in *Miller* declared:

"We therefore hold that the Eighth Amendment forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders. [Citation.] By making youth (and all that accompanies it) irrelevant to imposition of that harshest prison sentence, such a scheme poses too great a risk of disproportionate punishment." *Id.* at 479.

" 'A State is not required to guarantee eventual freedom,' but must provide 'some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation.' " *Id.* (quoting *Graham*, 560 U.S. at 75).

¶ 21 In *Miller*, the Court declined to consider whether "the Eighth Amendment requires a categorical bar on life without parole for juveniles, or at least for those 14 and younger." *Id.* However, the Court reasoned:

> "[G]iven all we have said *** about children's diminished culpability and heightened capacity for change, we think appropriate occasions for sentencing juveniles to the harshest possible penalty will be uncommon. That is especially so because of the great difficulty *** of distinguishing at this early age between 'the juvenile offender whose crime reflects unfortunate yet transient immaturity, and the rare juvenile offender whose crime reflects irreparable corruption.' [Citations.] Although we do not foreclose a sentencer's ability to make that judgment in homicide cases, we require it to take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison." *Id.* at 479-80.

¶ 22 This court held that *Miller* applied retroactively to cases on collateral review. *Davis*, 2014 IL 115595, ¶¶ 39, 42. The United States Supreme Court subsequently held likewise, concluding that *Miller* was a substantive constitutional rule that applied retroactively. *Montgomery*, 577 U.S. at ___, 136 S. Ct. at 736. In reaching this conclusion, the Court in *Montgomery* elaborated on its *Miller* decision.

¶ 23 *Montgomery* reiterated the premise that " 'children are constitutionally different from adults for purpose of sentencing.' " *Id.* at ___, 136 S. Ct. at 733 (quoting *Miller*, 567 U.S. at 471). "*Miller* requires that before sentencing a juvenile to life without parole, the sentencing judge take into account 'how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison.' " *Id.* at ___, 136 S. Ct. at 733 (quoting *Miller*, 567 U.S. at 480).

¶ 24 *Montgomery* clarified that *Miller* established both a substantive and a procedural requirement. "*Miller* drew a line between children whose crimes reflect transient immaturity and those rare children whose crimes reflect irreparable corruption." *Id.* at ___, 136 S. Ct. at 734. Even if a court considers a child's age prior to sentencing the child to life in prison without parole, that sentence still violates the eighth amendment for a juvenile whose crime reflects " ' "unfortunate yet transient immaturity." ' " *Id.* at ___, 136 S. Ct. at 734 (quoting *Miller*, 567 U.S. at 479, quoting *Roper*, 543 U.S. at 573). *Miller* held that sentencing a child to life without parole is excessive for all but " ' "the rare juvenile offender whose crime reflects irreparable corruption." ' " *Id.* at ___, 136 S. Ct. at 734 (quoting *Miller*, 567 U.S. at 479-80, quoting *Roper*, 543 U.S. at 573). *Miller* thereby rendered life without parole an unconstitutional penalty for that category of juvenile offenders whose crimes reflect the transient immaturity of youth. "As a result, *Miller* announced a substantive rule of constitutional law." *Id.* at ___, 136 S. Ct. at 734. *Miller*'s procedural component "requires a sentencer to consider a juvenile offender's youth and attendant characteristics before determining that life without parole is a proportionate sentence." *Id.* at ___, 136 S. Ct. at 734. Such a hearing "is necessary to separate those juveniles who may be sentenced to life without parole from those who may not. [Citation.] The hearing does not replace but rather gives effect to *Miller*'s substantive holding ***." *Id.* at ___, 136 S. Ct. at 735. Further, *Miller*'s substantive rule of constitutional law applies retroactively to cases on state court collateral review. *Id.* at ___, ___, 136 S. Ct. at 729, 736.

¶ 25    Eighth amendment jurisprudence continued to evolve. Approximately six months after the appellate court filed its opinion in the case at bar, this court decided *Holman*, 2017 IL 120655. We recognized in *Holman* that "*Miller* contains language that is significantly broader than its core holding. None of what the Court said is specific to only mandatory life sentences." *Id.* ¶ 38. Surveying case law from other states, this court in *Holman* determined as follows:

> "The greater weight of authority has concluded that *Miller* and *Montgomery* send an unequivocal message: Life sentences, whether mandatory or discretionary, for juvenile defendants are disproportionate and violate the eighth amendment, unless the trial court considers youth and its attendant characteristics. [Citations.] We agree with that conclusion and hold that *Miller* applies to discretionary sentences of life without parole for juvenile defendants." *Id.* ¶ 40.

¶ 26    In *Reyes*, 2016 IL 119271, decided within a year after *Montgomery*, this court held:

> "A mandatory term-of-years sentence that cannot be served in one lifetime has the same practical effect on a juvenile defendant's life as would an actual mandatory sentence of life without parole—in either situation, the juvenile will die in prison. *Miller* makes clear that a juvenile may not be sentenced to a mandatory, unsurvivable prison term without first considering in mitigation his youth, immaturity, and potential for rehabilitation. *** Accordingly, we hold that sentencing a juvenile offender to a mandatory term of years that is the functional equivalent of life without the possibility of parole constitutes cruel and unusual punishment in violation of the eighth amendment." *Id.* ¶ 9.

¶ 27    Therefore, to prevail on a claim based on *Miller* and its progeny, a defendant sentenced for an offense committed while a juvenile must show that (1) the defendant was subject to a life sentence, mandatory or discretionary, natural or *de facto*, and (2) the sentencing court failed to consider youth and its attendant characteristics in imposing the sentence. See *Holman*, 2017 IL 120655, ¶ 40; *Reyes*, 2016 IL 119271, ¶ 9.

¶ 28                               B. *De Facto* Life Sentences

¶ 29    Before this court, the State urges us to decide when a prison sentence for a term of years imposed on a juvenile defendant is the functional equivalent of life without parole. Defendant suggests that, if this court holds that his prison sentence is unconstitutional, "we need not decide anything more." We decline defendant's suggestion. "[C]lear, predictable, and uniform constitutional standards are especially desirable" in applying the eighth amendment. *Roper*, 543 U.S. at 594 (O'Connor, J., dissenting). "Drawing [a] line *** is subject, of course, to the objections always raised against categorical rules. *** For the reasons we have discussed, however, a line must be drawn." *Id.* at 574 (majority opinion). We choose to determine when a juvenile defendant's prison term is long enough to be considered a *de facto* life sentence without parole.

¶ 30    The State contends that "experience and common sense compel the conclusion that a 50-year sentence for a juvenile offender is not 'unsurvivable' and thus is not prohibited for juvenile homicide offenders whose crimes reflect the transient immaturity of youth." The State argues that "prison terms of less than 54 years for juvenile offenders are not functionally equivalent to life without parole." In support, the State points to several appellate court decisions that rejected *Miller* claims and reasoned that the shorter prison terms in those cases

were not comparable to the harshest prison term barred by *Miller* and were "survivable." See, *e.g.*, *People v. Perez*, 2018 IL App (1st) 153629, ¶¶ 37-39 (53-year sentence, release at age 70); *People v. Hoy*, 2017 IL App (1st) 142596, ¶ 46 (52-year sentence, release at age 68); *People v. Evans*, 2017 IL App (1st) 143562, ¶¶ 15-18 (90-year sentence, earliest release opportunity at age 62); *People v. Applewhite*, 2016 IL App (1st) 142330, ¶¶ 14-16 (45-year sentence, release at age 62).

¶ 31     The State posits that a prison term of somewhere between 54 and 59 years for a juvenile offender "is functionally equivalent to life without parole." Arguing that "defendants, prosecutors, and courts need to know the constitutional boundaries for sentencing juvenile homicide offenders," the State asks this court "to decide as a matter of law when, within this 54-to-59-year range, a term of years for a juvenile offender is functionally equivalent to life without parole." Defendant responds that the State's "survivability" standard is "arbitrary, unjustified, and unworkable." The parties disagree as to whether, or to what extent, actuarial tables and other statistical data support their respective arguments for and against "survivability." Indeed, the parties disagree as to whether resort should be had to such statistics at all.

¶ 32     Courts have struggled to formulate an exact calculation of a *de facto* life sentence imposed on a juvenile that violates the eighth amendment pursuant to *Miller* and *Montgomery*. See, *e.g.*, *Perez*, 2018 IL App (1st) 153629, ¶ 39 (collecting cases and recognizing "disagreement as to what exactly constitutes a *de facto* life sentence for a juvenile"). In the case at bar, the appellate court correctly observed that the questions of what age constitutes a lifetime, how that age is determined, and who makes that determination remain unresolved. 2017 IL App (1st) 142931, ¶ 57.

¶ 33     Some courts have held simply that *Miller* is triggered whenever a court imposes a sentence on a juvenile that results in a geriatric release. Practically, and ultimately, the prospect of geriatric release does not provide a juvenile with a meaningful opportunity to demonstrate the maturity and rehabilitation required to obtain release and reenter society. *State v. Zuber*, 152 A.3d 197, 212-13 (N.J. 2017); *Bear Cloud v. State*, 2014 WY 113, ¶ 33, 334 P.3d 132; *State v. Null*, 836 N.W.2d 41, 71 (Iowa 2013). In the case at bar, the appellate court relied on this reasoning to conclude that defendant's 50-year prison sentence was an unconstitutional *de facto* life sentence. 2017 IL App (1st) 142931, ¶¶ 61-62.

¶ 34     We choose a different course, one already charted by the entity best suited to do so—the General Assembly. Of course, " 'the Constitution contemplates that in the end our own judgment will be brought to bear on the question' " of constitutionally excessive punishment. *Atkins*, 536 U.S. at 312 (quoting *Coker v. Georgia*, 433 U.S. 584, 597 (1977)). However, the United States Supreme Court has "pinpointed that the 'clearest and most reliable objective evidence of contemporary values is the legislation enacted by the country's legislatures.' " *Id.* (quoting *Penry v. Lynaugh*, 492 U.S. 302, 331 (1989)). The Court has observed as follows:

> "[T]he fixing of prison terms for specific crimes involves a substantive penological judgment that, as a general matter, is 'properly within the province of legislatures, not courts.' [Citation.] Determinations about the nature and purposes of punishment for criminal acts implicate difficult and enduring questions respecting the sanctity of the individual, the nature of law, and the relation between law and the social order. *** The efficacy of any sentencing system cannot be assessed absent agreement on the

purposes and objectives of the penal system. And the responsibility for making these fundamental choices and implementing them lies with the legislature." *Harmelin v. Michigan*, 501 U.S. 957, 998 (1991) (Kennedy, J., concurring in part and concurring in the judgment, joined by O'Connor and Souter, JJ.).

Accordingly, "[r]eviewing courts *** should grant substantial deference to the broad authority that legislatures necessarily possess in determining the types and limits of punishments for crimes ***." *Solem v. Helm*, 463 U.S. 277, 290 (1983).

¶ 35 This conclusion accords with Illinois law. "We have held that the nature, character and extent of the penalties for a particular criminal offense are matters for the legislature, which may prescribe definite terms of imprisonment, or specific amounts as fines or fix the minimum and maximum limits thereof." *People v. Smith*, 14 Ill. 2d 95, 97 (1958); see *People v. Steppan*, 105 Ill. 2d 310, 319 (1985); *People v. Taylor*, 102 Ill. 2d 201, 206 (1984) ("It is within the legislative province to define offenses and determine the penalties required to protect the interests of our society."). We generally defer to the legislature in the sentencing arena because the legislature, institutionally, is better equipped to gauge the seriousness of various offenses and to fashion sentences accordingly. *People v. Sharpe*, 216 Ill. 2d 481, 487 (2005); *People v. Koppa*, 184 Ill. 2d 159, 171 (1998). Also, when statutes are enacted after judicial opinions are published, it must be presumed that the legislature acted with knowledge of the prevailing case law. *People v. Espinoza*, 2015 IL 118218, ¶ 34; *People v. Hickman*, 163 Ill. 2d 250, 262 (1994).

¶ 36 Relevant to the instant case, the United States Supreme Court decided *Miller* in 2012, and this court decided *Davis* in 2014. In February 2015, House Bill 2471 was introduced in the General Assembly and ultimately enacted as Public Act 99-69, adding section 5-4.5-105 to the Unified Code of Corrections. Pub. Act 99-69 (eff. Jan. 1, 2016) (adding 730 ILCS 5/5-4.5-105). This statute provides a new sentencing scheme for defendants under the age of 18 when they committed their offenses. Before *any* sentence is imposed, subsection (a) requires the sentencing court to consider several "additional factors in mitigation in determining the appropriate sentence." 730 ILCS 5/5-4.5-105(a) (West 2016). This list is taken from and is consistent with *Miller*'s discussion of a juvenile defendant's youth and its attendant characteristics. See *Holman*, 2017 IL 120655, ¶¶ 45-46 (citing *Miller*, 567 U.S. at 477-78). Further, subsections (b) and (c) provide that the imposition of firearm enhancements is a matter of discretion with the court. 730 ILCS 5/5-4.5-105(b), (c) (West 2016).

¶ 37 Significantly, subsection (c) of the new juvenile sentencing statute provides in pertinent part as follows:

> "(c) Notwithstanding any other provision of law, if the defendant is convicted of first degree murder and would otherwise be subject to sentencing under clause (iii), (iv), (v), or (vii) of subparagraph (c) of paragraph (1) of subsection (a) of Section 5-8-1 of this Code based on the category of persons identified therein, the court shall impose a sentence of not less than 40 years of imprisonment." *Id.* § 5-4.5-105(c).

¶ 38 It must be remembered that the sentencing ranges for first degree murder for an adult offender are 20 to 60 years (*id.* § 5-4.5-20), 60 to 100 years with a finding of various aggravating factors (*id.* § 5-8-2), and natural life imprisonment with a finding of specified aggravating factors (*id.* §§ 5-4.5-20, 5-8-1).

¶ 39 However, the General Assembly has determined that the specified first degree murders that would justify natural life imprisonment for adult offenders would warrant a mandatory

minimum sentence of 40 years for juvenile offenders. The legislature evidently believed that this 40-year floor for juvenile offenders who commit egregious crimes complies with the requirements of *Miller*.

¶ 40　　In determining when a juvenile defendant's prison term is long enough to be considered *de facto* life without parole, we choose to draw a line at 40 years. This specific number does not originate in court decisions, legal literature, or statistical data. It is not drawn from a hat. Rather, this number finds its origin in the entity best suited to make such a determination—the legislature. The Supreme Court has made clear that "[i]t is for the State, in the first instance, to explore the means and mechanisms for compliance" with eighth amendment mandates pertaining to juvenile sentencing. *Graham*, 560 U.S. at 75. As this court recognized long ago, " '[g]reat constitutional provisions must be administered with caution. *** It must be remembered that legislatures are ultimate guardians of the liberties and welfare of the people in quite as great a degree as the courts.' " *People ex rel. Douglas v. Barrett*, 370 Ill. 464, 467 (1939) (quoting *Missouri, Kansas & Texas Ry. Co. v. May*, 194 U.S. 267, 270 (1904)).

¶ 41　　Extrapolating from this legislative determination, a prison sentence of 40 years or less imposed on a juvenile offender provides " 'some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation.' " *Miller*, 567 U.S. at 479 (quoting *Graham*, 560 U.S. at 75). We hereby conclude that a prison sentence of 40 years or less imposed on a juvenile offender does not constitute a *de facto* life sentence in violation of the eighth amendment.

¶ 42　　In the case at bar, defendant committed an offense, at age 16, that subjected him to a legislatively mandated minimum sentence of 45 years and for which he received a sentence of 50 years. Because defendant's sentence was greater than 40 years, we conclude that defendant received a *de facto* life sentence. We also conclude that the circuit court failed to consider defendant's youth and its attendant characteristics in imposing that sentence. Therefore, we hold that defendant's sentence violates the eighth amendment. Accordingly, we vacate defendant's sentence as unconstitutional pursuant to *Miller*, *Montgomery*, *Reyes*, and *Holman*.

¶ 43　　　　　　　　　　　　　　C. Remedy

¶ 44　　Lastly, the parties disagree as to the appropriate remedy. The State argues, as it argued before the appellate court, that the appropriate remedy is not to remand for a new sentencing hearing but rather to remand to the circuit court only to advance postconviction proceedings to the second stage. Defendant argues that the appropriate remedy is a new sentencing hearing. We agree with defendant.

¶ 45　　The procedural framework of the Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2014)) is familiar. The Act provides a three-stage process for the adjudication of postconviction petitions. At the first stage, the circuit court determines whether the petition is "frivolous or is patently without merit." *Id.* § 122-2.1(a)(2). If the petition is not dismissed at the first stage, it advances to the second stage, where the court may appoint counsel for an indigent defendant and the State may file responsive pleadings. *Id.* §§ 122-4, 122-5. If the petition makes a substantial showing of a constitutional violation, the petition proceeds to the third stage, where the court conducts an evidentiary hearing. *Id.* § 122-6; see *People v. Tate*, 2012 IL 112214, ¶¶ 9-10; *Harris*, 224 Ill. 2d at 125-26. Where the first-stage summary dismissal of a postconviction petition is reversed on appeal, the usual remedy is to remand for

the advancement of the postconviction proceedings to the second stage. See, *e.g.*, *People v. Allen*, 2015 IL 113135, ¶¶ 45-46; *Tate*, 2012 IL 112214, ¶ 26.

¶ 46 However, the record before us does not require factual development. All of the facts and circumstances to decide defendant's claim are already in the record. See, *e.g.*, *Holman*, 2017 IL 120655, ¶ 32. While the circuit court stated that it "considered all of the relevant statutory requirements," the record does not indicate that the court considered defendant's youth and its attendant characteristics. See *id.* ¶ 46 (citing *Miller*, 567 U.S. at 477-78). Accordingly, we earlier held that defendant's 50-year prison sentence, imposed for a crime he committed while a juvenile, violated the eighth amendment. This holding applies retroactively and is cognizable in defendant's postconviction proceeding. See *Montgomery*, 577 U.S. at ___, ___, 136 S. Ct. at 729, 736.

¶ 47 Based on the particular issue raised in this appeal and in the interests of judicial economy, we agree with the appellate court that the proper remedy is to vacate defendant's sentence and to remand for a new sentencing hearing. See, *e.g.*, *Davis*, 2014 IL 115595, ¶ 1. Further, the parties correctly agree that defendant is entitled on remand to be sentenced under the scheme prescribed by section 5-4.5-105 of the Unified Code of Corrections (730 ILCS 5/5-4.5-105 (West 2016)). See *Holman*, 2017 IL 120655, ¶ 45; *Reyes*, 2016 IL 119271, ¶ 12; *People v. Smolley*, 2018 IL App (3d) 150577, ¶¶ 21-22.

¶ 48                                        III. CONCLUSION

¶ 49 For the foregoing reasons, the judgment of the appellate court is affirmed, and the cause is remanded to the circuit court of Cook County for resentencing in accordance with section 5-4.5-105 of the Unified Code of Corrections (730 ILCS 5/5-4.5-105 (West 2016)).

¶ 50 Appellate court judgment affirmed.

¶ 51 Sentence vacated.

¶ 52 Cause remanded with directions.

¶ 53 JUSTICE BURKE, specially concurring:

¶ 54 In *Miller v. Alabama*, 567 U.S. 460 (2012), the United State Supreme Court held that a mandatory sentence of life without the possibility of parole imposed on a juvenile offender violates the eighth amendment prohibition against cruel and unusual punishment. The *Miller* court did not categorically ban life sentences for juveniles. Rather, under *Miller*, there are three parameters that, when combined, will render a juvenile's sentence unconstitutional: (1) the sentence imposed must be a life sentence, (2) the sentence imposed must be mandatory, affording no discretion to the sentencing court, and (3) there must be no possibility for parole. These three parameters must be present before a sentence imposed on a juvenile will violate the eighth amendment pursuant to *Miller*.

¶ 55 In *People v. Reyes*, 2016 IL 119271 (*per curiam*), this court addressed one of these parameters. Although the Supreme Court has not yet weighed in on the issue, we concluded in *Reyes* that the *Miller* rule also applies to mandatory *de facto* life sentences without the possibility of parole. *Id.* ¶ 10. In *Reyes*, the defendant was sentenced to a mandatory term of 97 years, with the earliest possible release after 89 years. *Id.* ¶ 2. The State conceded that the defendant's sentence was unquestionably the functional equivalent of a mandatory life

sentence without the possibility of parole and, therefore, unconstitutional under *Miller*. *Id.* ¶ 10. Accordingly, we remanded for resentencing. *Id.* ¶ 4. Under the circumstances, however, we did not need to determine how long a term-of-years sentence had to be before it would be deemed the equivalent of a life sentence. The State asks us to make that determination now.

¶ 56        Defendant contends that we should consider whether a sentence violates the eighth amendment on a case by case basis. However, I agree with the majority that " '[c]lear, predictable, and uniform constitutional standards are especially desirable' in applying the eighth amendment" (*supra* ¶ 29 (quoting *Roper v. Simmons*, 543 U.S. 551, 594 (2005) (O'Connor, J., dissenting))). Thus, it is appropriate that we decide what mandatory term-of-years sentence without the possibility of parole constitutes a *de facto* life sentence pursuant to *Miller*. I do not agree, however, with the majority's resolution of this issue.

¶ 57        In *Reyes*, we held that a term-of-years sentence imposed on a juvenile will violate the eighth amendment if, statistically speaking, the sentence is the equivalent of a life sentence. And, as the State correctly points out in its brief, under the precepts of *Miller* a mandatory term-of-years sentence without the possibility of parole is the equivalent of a life sentence if the sentence virtually guarantees that the juvenile will die in prison without any opportunity for release. See also *People v. Gipson*, 2015 IL App (1st) 122451, ¶¶ 66-67 (15-year-old defendant's sentence of 52 years, with earliest possible release at age 60, was not a *de facto* life sentence because, according to the defendant, his life expectancy was 67.8 years and "[a]lthough defendant's years in society will be precious few, the United States Supreme Court has drawn the eighth amendment line at life without the possibility of parole and we cannot cross that line"). Thus, properly framed, the determination of what constitutes a *de facto* life sentence is essentially a mathematical calculation.

¶ 58        Nonetheless, in deciding what mandatory term-of-years sentence is a *de facto* life sentence, the majority does not engage in a statistical analysis of the life span of juveniles sentenced to life imprisonment or make any attempt to determine what term-of-years sentence would exceed the minor's life expectancy and virtually guarantee that the juvenile will die in prison without any opportunity to be released. Nor does the majority consider the reasoning of other courts that have grappled with resolving this admittedly difficult calculation. Instead, the majority chooses "a different course, one already charted by the entity best suited to do so—the General Assembly." *Supra* ¶ 34. This is where, I believe, the majority goes wrong.

¶ 59        To justify deferring to the legislature, the majority cites case law that stands for the well-accepted tenet that penological judgments, such as the fixing of appropriate prison terms for specific crimes and determining the types and limits of punishments that may be imposed, are properly within the province of the legislature. But making a penological judgment based on contemporary values is not what is at issue here. In the appeal before us, we are not asked to decide what the proper punishment should be for specific crimes committed by juveniles. Rather, the only question before us is what constitutes a *de facto* life sentence.

¶ 60        The majority goes even further astray when it relies on section 5-4.5-105 of the Unified Code of Corrections (730 ILCS 5/5-4.5-105 (West 2016)) to reach the conclusion that a prison term of 40 years "is long enough to be considered *de facto* life without parole." *Supra* ¶ 40. To be sure, section 5-4.5-105 was enacted by the legislature in response to *Miller* and provides, prospectively, a new sentencing scheme for defendants who were under 18 years of age when they committed their crimes. As the majority notes, subsection (a) of the statute requires a

sentencing court to consider in mitigation the factors listed in *Miller*, including the defendant's youth and circumstances attendant to youth, as well as the unique characteristics of the offender and the offense; subsection (b) makes the imposition of sentencing enhancements based on the possession and/or use of a firearm in the commission of the offense discretionary rather than mandatory; and subsection (c) requires a sentencing court to impose on a juvenile *a minimum* sentence of 40 years' imprisonment for certain egregious first degree murder offenses that would warrant a sentence of natural life imprisonment for an adult offender. *Supra* ¶¶ 36-37 (citing 730 ILCS 5/5-4.5-105(a), (b), (c) (West 2016)).[1] The majority, however, mistakenly relies on this statute to make an unjustified leap. It holds that a sentence greater than 40 years is a *de facto* life sentence because "[t]he legislature evidently believed that this 40-year floor for juvenile offenders who commit egregious crimes complies with the requirements of *Miller*." *Supra* ¶ 39. This analysis is faulty for several reasons.

¶ 61        First, when the legislature enacted section 5-4.5-105(c), it did not select 40 years as the minimum sentence to be imposed based on its consideration of the life expectancy of juveniles or because it found a sentence greater than 40 years would be a *de facto* life sentence and unconstitutional under *Miller*. Rather, it merely decided that a sentence of *at least* 40 years was necessary to punish a juvenile offender for committing the specified types of murder listed in that subsection.

¶ 62        Second, the majority claims to be "extrapolating" from the legislature's requirement in section 5-4.5-105(c), that a minimum sentence of 40 years must be imposed for certain offenses, to find that 40 years is the maximum sentence that may be imposed without becoming a *de facto* life sentence. The majority provides no explanation for this maneuver.

¶ 63        Third, and perhaps most importantly, the majority clearly has it backwards. It is this court's responsibility to decide whether the legislature's sentencing scheme is constitutional, not the other way around. Yet the majority eschews its responsibility and relies solely on section 5-4.5-105(c) to make the constitutional determination that any term of imprisonment greater than 40 years is a *de facto* life sentence, stating, "This specific number does not originate in court decisions, legal literature, or statistical data. It is not drawn from a hat. Rather, this number finds its origin in the entity best suited to make such a determination—the legislature." *Supra* ¶ 40. Not only is the legislature not the "entity best suited" to determine whether its own statutory scheme is unconstitutional, it is the wrong entity to make that determination.

---

[1]Since the enactment of this new sentencing scheme, any sentence imposed on a juvenile offender should not run afoul of *Miller*. This is because the *Miller* Court did not foreclose the possibility of imposing a life sentence, actual or *de facto*, as long as that sentence was not mandatory and the sentencing court had the opportunity to make a thorough assessment of the defendant, his youth, and other attendant circumstances before imposing sentence.

In addition, Governor Pritzker recently signed into law Public Act 100-1182 (eff. June 1, 2019), which added section 5-4.5-110 to the Unified Code of Corrections (730 ILCS 5/5-4.5-110). This new law provides that, for most crimes, a person who was under the age of 21 when the crime was committed and is given a lengthy term-of-years sentence will have the ability to petition for parole after serving 10 years. If the conviction was for first degree murder or aggravated criminal sexual assault, the person will be eligible to petition for parole review after serving 20 years. The law applies to sentences imposed after the effective date of June 1, 2019.

¶ 64    To demonstrate the flaw in the majority's reasoning, assume for the moment that a minor committed one of the offenses listed in section 5-4.5-105(c) and the sentencing court imposed the mandatory minimum sentence of 40 years. The minor then appealed, arguing that his sentence is unconstitutional pursuant to *Miller*. How would we address this appeal? Would we simply find that the legislature evidently believed that a minimum 40-year sentence complies with *Miller* and, therefore, it must be constitutional? If so, this would be quite extraordinary and obviously incorrect. Yet this is exactly what the majority is saying here.

¶ 65    In my view, the answer to the question "what constitutes a *de facto* life sentence" is a calculation—it is when the defendant's age at the earliest projected time of release exceeds an incarcerated minor's average life expectancy. See 2017 IL App (1st) 142931, ¶ 62; *People v. Sanders*, 2016 IL App (1st) 121732-B, ¶ 26; *Gipson*, 2015 IL App (1st) 122451, ¶ 67. I recognize that life expectancy is a complex composite of several variables that differ on an individual basis. See 2017 IL App (1st) 142931, ¶ 57. Thus, any life expectancy determination will necessarily be somewhat arbitrary. Nevertheless, using all of the information available to us at this time, I believe it is possible to arrive at a number that reasonably reflects the average life expectancy of a minor who is incarcerated for a lengthy period of time.

¶ 66    The appellate court below, like the *Sanders* court, used a life expectancy of 64 years to calculate a *de facto* life sentence, relying on the United States Sentencing Commission Preliminary Quarterly Data Report (2012 Preliminary Report), http://www.lb7.uscourts.gov/documents/USSC_Quarter_Report_3rd_12_Final.pdf [https://perma.cc/GX2C-AU53]. However, another resource has shown that the 64-year life expectancy referenced in the Quarterly Report was formulated by adding 39 years—a number used, for statistical purposes, to represent a life sentence of a person incarcerated in federal prison—to the median age of federal prisoner at the time of sentencing (25 years). See Deborah LaBelle, *Michigan Life Expectancy Data for Youth Serving Natural Life Sentences* (2013), available at http://www.lb7.uscourts.gov/documents/17-12441.pdf [https://perma.cc/9PSY-3B6Q]. Thus, the accuracy of the 64-year life expectancy figure with regard to minors is suspect, particularly when one takes into account that it is generally recognized that the life expectancy of a minor sentenced to a lengthy prison term is further diminished. In fact, according to the article by LaBelle cited above, based on a review of Michigan data, the average life expectancy for a child sentenced to natural life may be as little as 50.6 years.

¶ 67    Because determining life expectancy is not a precise science, I would err on the side of caution and find that an incarcerated minor who is sentenced to a lengthy prison term has a life expectancy of 55 years. Thus, any sentence imposed on a minor that would result in the minor's earliest release from prison when he or she is 55 years old or more would be a *de facto* life sentence.

¶ 68    In the present case, defendant was sentenced to 50 years' imprisonment for a crime he committed when he was 16 years old. Taking judicial notice of the Illinois Department of Corrections website, defendant's earliest opportunity for release is May 12, 2059, at which time he would be 66 years old. See 2017 IL App (1st) 142931, ¶ 62. Applying the formula above, defendant's sentence is a *de facto* life sentence and, therefore, violates the eighth amendment of our United States Constitution. Thus, like the majority, I would affirm the appellate court's judgment and remand the matter for resentencing.