# Illinois Official Reports

## Appellate Court

---

### *People v. Mahomes*, 2020 IL App (1st) 170895

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. QUOVADAS MAHOMES, Defendant-Appellant. |
| District & No. | First District, Fourth Division<br>No. 1-17-0895 |
| Filed<br>Rehearing denied | September 24, 2020<br>November 20, 2020 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 13-CR-4269; the Hon. James B. Linn, Judge, presiding. |
| Judgment | Affirmed and remanded with directions. |
| Counsel on Appeal | James E. Chadd, Patricia Mysza, and Kieran M. Wiberg, of State Appellate Defender's Office, of Chicago, for appellant.<br><br>Kimberly M. Foxx, State's Attorney, of Chicago (Alan J. Spellberg, Clare Wesolik Connolly, and Jennifer Cooper, Assistant State's Attorneys, of counsel), for the People. |
| Panel | JUSTICE HALL delivered the judgment of the court, with opinion.<br>Presiding Justice Gordon and Justice Reyes concurred in the judgment and opinion. |

¶ 1      Following a bench trial, defendant Quovadas Mahomes was convicted of first degree murder, aggravated battery with a firearm, and aggravated discharge of a firearm and was sentenced to an aggregate sentence of 44 years' imprisonment in the Department of Corrections. Defendant now appeals.

¶ 2      On appeal, defendant contends that the *de facto* life sentence imposed for a crime he committed as a 17-year-old juvenile violates the eighth amendment and must be vacated. He further contends that the trial court did not consider all of the *Miller* factors before finding him "incorrigible" and sentencing him to a *de facto* life sentence. For the reasons that follow, we vacate defendant's sentence and remand for a new sentencing hearing.

# I. BACKGROUND

¶ 3

¶ 4      Defendant was charged with multiple counts of first degree murder in connection with the shooting death of Devin Common. He was also charged with attempted first degree murder of Phillip Durham, Selassie Blandon, and Timothy Harris; aggravated battery with a firearm of Durham and Blandon; and aggravated discharge of a firearm. All of the charges stemmed from a January 29, 2013, shooting on the 7400 block of South Champlain Avenue in Chicago.

¶ 5      The State presented evidence at trial that Blandon and Durham were walking with Common near 75th Street and Champlain Avenue after visiting a neighborhood store at approximately noon. As they approached the intersection, they saw defendant cross 75th Street and continue north on Champlain Avenue. Common, Blandon, and Durham turned onto Champlain Avenue and walked towards Durham's apartment on 74th Street and Champlain Avenue. At the time, defendant was 10 to 20 feet in front of them. Defendant did not say anything to them, and they did not say anything to defendant. When they were halfway down the block, Harris, who was walking south on Champlain Avenue, approached and asked Durham for a "light." Durham knew Harris, and the group stopped so that Durham could light Harris's cigarette. As they stood there, three shots were fired from the north. Blandon looked and saw defendant facing them and firing a gun towards the group. Durham and Harris immediately fell to the ground, while Blandon subsequently ran into a nearby gangway and returned to the store, seeking help. Blandon, Durham, and Common were all struck by gunshots. Common subsequently died from his injuries.

¶ 6      Harris testified that after approximately eight shots were fired, he saw defendant stand over Durham pointing the gun, but no additional shots were fired. Defendant then ran south on Champlain Avenue, with Harris chasing him while also trying to get to his phone. Harris saw an unmarked police car near the corner of 75th Street and Champlain Avenue and told the officers that defendant had just shot several people. He pointed the officers in the direction that defendant ran. Those officers began pursuing defendant.

¶ 7      Meanwhile, someone from the store had also flagged down a police car and reported the shooting. Defendant was arrested near 76th Street and Champlain Avenue, and was identified in showups by Blandon and Harris. A gunshot residue test (GSR) on defendant's hand was positive, and a gun was recovered from the area where defendant ran. The recovered gun matched the shell casings recovered from the scene of the shooting.

¶ 8        Defendant testified that he was a member of the "9-0" section of the Gangster Disciples (GD). He knew Durham and stated that Durham was a member of the Mickey Cobras, who were "at war" with the GDs. Defendant was also familiar with Blandon and indicated that he was also a member of a rival gang. Defendant testified about an incident that occurred a week prior in which Durham pulled up in a car with other gang members and pointed a gun at defendant, although no shots were fired.

¶ 9        Defendant further testified that he went to the area of 75th Street and Champlain Avenue with two other GDs to sell two bags of drugs to someone who had requested them. His companions dropped him off, so that he could make the sale, and drove away. After making the sale, defendant was waiting for his companions to return when he saw Durham, Blandon, and Common walking towards him. Defendant stated that he thought they were following him, so he started walking away from the three. When Harris stopped near the group, defendant turned around and started shooting because he was afraid. Defendant then ran away before being arrested. He admitted that he lied to police about having a gun and denied everything else.

¶ 10        The trial court rejected defendant's claim of self-defense and found him guilty of knowing first degree murder, two counts of aggravated battery with a firearm, and one count of aggravated discharge with a firearm. The court expressed uncertainty that defendant intended to kill and acquitted defendant of the attempted murder charges. Defendant's motion for a new trial was denied and the matter was set for sentencing.

¶ 11        At the sentencing hearing, defendant's presentence investigation (PSI) report was presented, which included multiple traumatic incidents in defendant's life, and defense counsel presented evidence in mitigation. Additionally, defendant's mother indicated that she encouraged defendant to join a gang.

¶ 12        Prior to imposing sentence, the trial court noted a number of things that it would consider related to juvenile offenders. The court noted defendant's young age and declined to impose the discretionary firearm enhancement to defendant's sentence. The court further noted that it was making a "cautious effort" not to impose a *de facto* natural life sentence. On January 12, 2017, the trial court sentenced defendant to a 30-year term of imprisonment for first degree murder. Finding that the murder was a triggering offense, the court sentenced defendant to consecutive seven-year terms for aggravated battery and a concurrent five-year term for aggravated discharge, for a total of 44 years' imprisonment. Defendant's motion to reconsider his sentence was denied, and this timely appeal followed.

¶ 13                                          II. ANALYSIS

¶ 14        On appeal, defendant makes two arguments in support of his contention that his sentence should be reversed. He contends that (1) his 44-year sentence was a *de facto* natural life sentence that violates the eighth amendment (U.S. Const., amend. VIII) and should be reversed and (2) the trial court failed to consider all of the relevant aspects of youth prior to sentencing him and should be reversed. Defendant cites our supreme court's holding in *People v. Buffer*, 2019 IL 122327, in support of his contentions that his sentence is unconstitutional. He also cites the United States Supreme Court's decision in *Miller v. Alabama*, 567 U.S. 460 (2012) and its progeny in support of his contention that none but the "rarest of youth offenders" should be sentenced to natural life sentences. Defendant contends that his sentence can only be affirmed if the trial court properly found him to be one of the few juveniles whose crime

demonstrated irreparable corruption, and that the record clearly indicates that the trial court did not intend to sentence him to a *de facto* life sentence.

¶ 15 In the alternative, defendant contends that his sentence should be reversed because the record does not indicate that the trial court considered all of the relevant aspects of his youth or reached the conclusion that he was irretrievably depraved prior to imposing a *de facto* life sentence.

¶ 16 The State responds that defendant's sentence should be affirmed because the trial court considered defendant's youth and attendant characteristics, as well as his rehabilitative potential, before imposing an aggregate discretionary 44-year sentence.

¶ 17 Because defendant's arguments on appeal are intertwined, we will consider them together.

¶ 18 The eighth amendment prohibits, *inter alia*, the imposition of cruel and unusual punishment, which includes excessive sanctions. *Roper v. Simmons*, 543 U.S. 551, 560 (2005). In *Miller*, the Supreme Court held that a sentence of "mandatory life without parole for those under the age of 18 at the time of their crimes" is a violation of this prohibition. *Miller*, 567 U.S. at 465. In *People v. Holman*, 2017 IL 120655, ¶ 40, our supreme court expanded *Miller* protection to "discretionary sentences of life without parole for juvenile defendants."

¶ 19 In *Buffer*, 2019 IL 122327, ¶ 27, our supreme court clarified what constituted a life sentence for a juvenile offender. The *Buffer* court found that, for a juvenile, a *de facto* life sentence was a sentence over 40 years. *Buffer*, 2019 IL 122327, ¶¶ 40-41.

¶ 20 In the present case, defendant was a 17-year-old juvenile at the time he committed the offenses and received a 44-year term of imprisonment, which is a *de facto* life sentence under *Buffer*. As defendant was a juvenile when the offense was committed, there is no question that the provisions of *Miller* apply retroactively to him (*Montgomery v. Louisiana*, 577 U.S. ___, ___, 136 S. Ct. 718, 736 (2016)) and that he is entitled to a sentencing hearing and sentence which take the *Miller* factors into account. *Holman*, 2017 IL 120655, ¶ 46.

¶ 21 Our supreme court has found that, under *Miller*, a juvenile defendant, such as defendant, may be sentenced to a *de facto* life sentence "only if the trial court determines that the defendant's conduct showed irretrievable depravity, permanent incorrigibility, or irreparable corruption beyond the possibility of rehabilitation." *Holman*, 2017 IL 120655, ¶ 46.

¶ 22 Our supreme court has further found that, before sentencing a juvenile to a *de facto* life sentence, the trial court must consider the defendant's youth and its attendant characteristics, which include

> "(1) the juvenile defendant's chronological age at the time of the offense and any evidence of his particular immaturity, impetuosity, and failure to appreciate risks and consequences; (2) the juvenile defendant's family and home environment; (3) the juvenile defendant's degree of participation in the homicide and any evidence of familial or peer pressures that may have affected him; (4) the juvenile defendant's incompetence, including his inability to deal with police officers or prosecutors and his incapacity to assist his own attorneys; and (5) the juvenile defendant's prospects for rehabilitation." *Holman*, 2017 IL 120655, ¶ 46.

¶ 23 In the case at bar, the record reveals that the trial court spent a considerable amount of time and deliberation to be sure that it was rendering the proper sentence for a juvenile defendant and to avoid giving defendant a *de facto* life sentence. The court noted that the law had changed such that the firearm enhancement was no longer mandatory for a juvenile defendant, and it

declined to apply the enhancement to defendant's sentence. The court commented on defendant's age and his lengthy juvenile history and noted that defendant had not previously been amenable to rehabilitation "at that time." However, we must disagree with the State that these comments by the trial court amounted to a full consideration of the *Miller* factors. Additionally, the *Buffer* case was not decided until 2019, more than two years after defendant was sentenced, which capped a juvenile defendant's sentence to 40 years unless the sentencing court specifically finds that such defendant is beyond rehabilitation. See *Buffer*, 2019 IL 122327, ¶ 21. This change in the law for sentencing of juvenile defendants since defendant's sentencing hearing necessitates that defendant receive a new sentencing hearing.

¶ 24    Accordingly, we must conclude that defendant's 44-year sentence violates the eighth amendment, and we vacate that sentence as unconstitutional.

¶ 25    We therefore remand this matter for a new sentencing hearing, and defendant shall be entitled on remand to be sentenced under the scheme prescribed by section 5-4.5-105 of the Unified Code of Corrections (730 ILCS 5/5-4.5-105 (West 2016)). See *Buffer*, 2019 IL 1122327, ¶ 47.

¶ 26                                    III. CONCLUSION

¶ 27    For the foregoing reason, the judgment of the circuit court of Cook County is affirmed, defendant's sentence is vacated, and the cause is remanded for resentencing consistent with this decision.

¶ 28    Affirmed and remanded with directions.