2022 IL App (1st) 160004-U

FIRST DISTRICT,
FIRST DIVISION
May 31, 2022

No. 1-16-0004

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Cook County, Illinois. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) | No. 94 CR 8144 |
| | ) | |
| DERRICK JORDAN, | ) ) | Honorable |
| Defendant-Appellant. | ) ) ) | Mary Margaret Brosnahan, Judge Presiding. |

JUSTICE COGHLAN delivered the judgment of the court.
Justices Pucinski and Walker concurred in the judgment.

**ORDER**

¶ 1     *Held*:     The judgment of the circuit court denying defendant leave to file his second successive postconviction petition is reversed and remanded for resentencing based on our supreme court's decision in *People v. Buffer*, 2019 IL 122327.

¶ 2     Following a 1995 jury trial, defendant Derrick Jordan was convicted of first degree murder and attempted first degree murder for crimes he committed at 14 years old. He was sentenced to 60 years' imprisonment for murder and 26 years for attempted murder, to run consecutively. Defendant appealed the circuit court's order denying him leave to file his second successive postconviction petition, arguing that his aggregate 86-year sentence violated the

eighth amendment's prohibition on cruel and unusual punishment under *Miller v. Alabama*, 567 U.S. 460 (2012). We affirmed the circuit court's judgment on appeal.

¶ 3        On November 24, 2021, our supreme court issued a supervisory order directing us to vacate our judgment and reconsider our decision in light of *People v. Buffer*, 2019 IL 122327. For the following reasons, we reverse and remand for a new sentencing hearing.

¶ 4                                BACKGROUND

¶ 5        On the morning of April 1, 1993, Malcolm and Carolyn Lofton[1] accompanied Veronica Humes, their 31-year-old wheelchair-bound, paraplegic niece, to a currency exchange in Chicago, Illinois to cash a disability check. Veronica gave some of the money to Carolyn, who put it in her sock. As they were walking to Carolyn's brother's house, defendant ran up behind them, put a gun to Carolyn's head, and demanded money. Veronica gave all of the money she had to Carolyn, who handed it to defendant, but he demanded more money. Defendant pulled Carolyn into a nearby gangway and when Malcolm approached, defendant shot him in the shoulder. Malcolm backed away, intending to go to Carolyn's brother's house for help. Defendant went through Carolyn's pockets and, finding nothing, shot her in the head. Veronica, just a few feet away, began to scream and Malcolm turned around to see Carolyn on the ground. Defendant fled the scene.

¶ 6        On October 24, 1993, defendant went to the home of Sammy Simmons demanding $5 that he was owed. When Simmons went upstairs to retrieve the money, defendant shot him in the back. During their investigation of this crime, the police questioned defendant, who told them he had a gun under his mattress. The police recovered the gun and discovered it was the same caliber as the gun used to shoot Carolyn.

---

[1]We will refer to Malcolm and Carolyn Lofton by their first names.

¶ 7     Defendant was arrested for Carolyn's murder in December 1993. Malcolm and Veronica identified Defendant as the shooter in a line-up and photo array in December 1993 and January 1994. Defendant was tried as an adult following a discretionary transfer hearing in juvenile court pursuant to section 5-4(3)(b) of the Juvenile Court Act. 705 ILCS 405/5-4(3)(b) (West 1992). Defendant was found guilty of murder and attempted murder following a jury trial.

¶ 8     At the sentencing hearing, the court observed as follows:

"What is relevant, matters in mitigation, first is the extreme youth of the defendant at the time of the crime. 14 years of age. I do have before me a report, a school report of the defendant while he was in custody to say the evidence introduced at the trial indicated that Mr. Jordan was *** considerably less than an outstanding student, history of truancy, indeed from high school but apparently the defendant certainly can do the work. Because the juvenile detention center said he earned an A in math, A in reading, A in history, A in geography, B in spelling: Also earned an A in conduct and A in effort.

One of the tragedies of this offense is that clearly the defendant had a potential to achieve. Indeed, I believe the evidence *** showed the defendant could have probably been anything he wanted to be. Enormous potential and he's throwing it down the drain, so to speak. What a tragedy. It's a tragedy for him and his family, no question."

¶ 9     The court also considered that "one of the victims of the crime was a paraplegic" and that the "killing was for profit. The defendant was unhappy with the proceeds, with the amount of money the victims had. And that's why he killed her" in the presence of her husband and niece. It was "an intentional cold-blooded killing" that occurred in "the daylight hours in the street of Chicago in a common residential commercial area." While the court found there was justification for an extended term or life sentence, it indicated that it was going to "try to leave some hope

open" and sentenced defendant to consecutive terms of 60 years' imprisonment for murder and 26 years for attempted murder, for an aggregate sentence of 86 years.

¶ 10     In the years following defendant's convictions, he pursued an unsuccessful direct appeal (*People v. Jordan*, No. 1-19-2185 (1998) (unpublished order under Illinois Supreme Court Rule 23)) and several forms of collateral relief, including an initial postconviction petition, a petition for *habeas corpus*, and a successive postconviction petition, all of which were unsuccessful.

¶ 11     This appeal stems from defendant's second successive postconviction petition filed on May 6, 2015, where he challenged his 86-year aggregate sentence as unconstitutional under *Miller*, 567 U.S. at 465. The circuit court denied him leave to file his petition. We affirmed the circuit court's judgment, finding that defendant failed to establish prejudice where his 43-year sentence, after taking into account day-for-day good conduct credit, did not amount to a *de facto* life sentence. *People v. Jordan*, 2018 IL App (1st) 160004-U, ¶¶ 23-25.[2]

¶ 12                                        ANALYSIS

¶ 13     The Post-Conviction Hearing Act (Act) allows criminal defendants to challenge their convictions based on violations of their constitutional rights. 725 ILCS 5/122(a)(1) (West 2014). The Act contemplates the filing of a single postconviction petition (*People v. Brown*, 2017 IL App (1st) 150132, ¶ 35), and a petitioner may file a successive postconviction petition only if he obtains leave of court. 735 ILCS 5/122-1(f) (West 2014). A court will grant leave to file if a petitioner can demonstrate "cause" for not having raised the alleged errors in the original postconviction petition and "prejudice" by showing the alleged constitutional error so infected the entire trial that the resulting conviction or sentence violates due process. *People v. Ortiz*, 235

_____

[2]On September 4, 2018, this court filed a modified Rule 23 order upon denial of defendant's petition for rehearing, rejecting his argument that his sentence violates the proportionate penalties clause of the Illinois Constitution. *Jordan*, 2018 IL App (1st) 160004-U, ¶ 26.

Ill. 2d 319, 329 (2009). We review *de novo* a trial court's denial of leave to file a successive postconviction petition. *People v. Bailey*, 2017 IL 121450, ¶ 13.

¶ 14    In *Miller*, 567 U.S. at 465, the Supreme Court held that "mandatory life without parole for those under the age of 18 at the time of their crime violates the Eighth Amendment's prohibition on 'cruel and unusual punishments.' " The United States Supreme Court and our supreme court have since held that *Miller* applies retroactively to cases on collateral review. *Montgomery v. Louisiana*, 577 U.S. 190, 212 (2016); *People v. Davis*, 2014 IL 115595, ¶ 34. *Miller* has also been extended to discretionary life sentences (*People v. Holman*, 2017 IL 120655, ¶ 40) and *de facto* life sentences (*People v. Reyes*, 2016 IL 119271, ¶ 9). In *Buffer*, 2019 IL 122327, ¶ 40, our supreme court held that any juvenile sentenced to incarceration in excess of 40 years has received a *de facto* life sentence. Prior to imposing such a sentence, the court must consider "defendant's youth and its attendant characteristics." *Id.* ¶ 42.

¶ 15    A life or *de facto* life sentence for a juvenile defendant is only constitutional "if the trial court determines that the defendant's conduct showed irretrievable depravity, permanent incorrigibility, or irreparable corruption beyond the possibility of rehabilitation." *Holman*, 2017 IL 120655, ¶ 46. "The court may make that decision only after considering the defendant's youth and its attendant characteristics." *Id.* These characteristics include:

"(1) the juvenile defendant's chronological age at the time of the offense and any evidence of his particular immaturity, impetuosity, and failure to appreciate risks and consequences; (2) the juvenile defendant's family and home environment; (3) the juvenile defendant's degree of participation in the homicide and any evidence of familial or peer pressures that may have affected him; (4) the juvenile defendant's incompetence, including his inability to deal with police officers or prosecutors and his incapacity to

assist his own attorneys; and (5) the juvenile defendant's prospects for rehabilitation." *Id.* (referred to as the "*Miller* factors").

¶ 16     Defendant asserts that he received a *de facto* life sentence, and the court did not sufficiently consider the *Miller* factors where it "acknowledged the *fact* of Derrick Jordan's youth but did not analyze its *impact.*" (Emphasis in original).[3] Under *People v. Dorsey*, 2021 IL 123010, ¶ 1, "good-conduct credit is relevant" to considering whether a defendant received a *de facto* life sentence. Defendant was (and continues to be) eligible to receive day-for-day credit for good conduct, reducing his sentence by 50% for a total of 43 years' imprisonment. See 730 ILCS 5/3-6-3(a)(1), (a)(2) (West 1992).

¶ 17     *Buffer* makes clear that defendant's 43-year sentence is a *de facto* life sentence. In order to sentence a juvenile to over 40 years of incarceration, without possibility of parole, the trial court must have considered defendant's youth and its attendant characteristics. *Buffer*, 2019 IL 122327, ¶ 42. In making this determination, we examine what the trial court "heard and considered" for each *Miller* factor.[4] *People v. Lusby*, 2020 IL 124046, ¶ 36. Although no "magic words" are required, the sentencing court must consider these factors for a *de facto* life sentence to be constitutional under *Miller*. *Id.* ¶ 31.

¶ 18      Although we do not "fault the trial court for failing to apply principles of law and science that had not yet been adopted by the Supreme Court, the trial court's findings do not

---

[3]Prior to filing his supplemental brief, defendant filed a motion for summary disposition, which we took with the case. In light of the issuance of this Rule 23 order, the motion for summary disposition is denied as moot.

[4]Defendant argues that *Dorsey* "suggests that [his] life while in DOC custody, information unavailable to the sentencing" should be taken into account and supports resentencing. However, the court in *Holman*, 2017 IL 120655, ¶ 47, held that "[f]or juvenile defendants *** who were sentenced before the statutory amendment, any inquiry into the *Miller* factors is backwards-looking." *Dorsey* does not overrule the backwards-looking inquiry set forth in *Holman* as it relates to the trial court's consideration of the *Miller* factors.

imply that it believed defendant was the *rarest* of juveniles whose crime showed that he was permanently incorrigible." (Emphasis in original.) *People v. Nieto*, 2020 IL App (1st) 121604-B, ¶ 58. Defendant has therefore established the prejudice required to file his second successive postconviction petition. See *People v. Jackson*, 2020 IL App (1st) 143025-B, ¶¶ 49-51.

¶ 19                                                   CONCLUSION

¶ 20       For the foregoing reasons, we reverse the judgment of the circuit court and remand for a new sentencing hearing.

¶ 21       Reversed and remanded.