2020 IL App (1st) 171135
No. 1-17-1135
Opinion filed December 31, 2020

FOURTH DIVISION

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 04 CR 29140 |
| BRYANT ERVES, | ) ) | The Honorable William G. Lacy, |
| Defendant-Appellant. | ) | Judge, presiding. |

PRESIDING JUSTICE GORDON delivered the judgment of the court, with opinion.
Justices Lampkin and Reyes concurred in the judgment and opinion.

**OPINION**

¶ 1    Defendant Bryant Erves appeals from the third-stage dismissal of his petition for postconviction relief.

¶ 2    Defendant, 17 years old, was convicted, after a bench trial, of first-degree murder and sentenced to 30 years, plus an additional 25-year firearm

enhancement, for a total of 55 years with the Illinois Department of Corrections (IDOC). After a third-stage evidentiary hearing, the trial court denied his claim under *Miller v. Alabama*, 567 U.S. 460 (2012), for a new sentencing hearing, as well as his claims of actual innocence and ineffective assistance of counsel.

¶ 3 On this appeal, the State concedes that the trial court did not apply the *Miller* factors when considering defendant's sentence and, thus, the State joins defendant in arguing that he is entitled to a new sentencing hearing.

¶ 4 For the reasons explained below, we agree that defendant is entitled to a new sentencing hearing and, therefore, we vacate his sentence and remand for a new sentencing hearing; but we do not consider defendant's other claims at this time.

¶ 5 In prior postconviction cases when this court has remanded for a new sentencing hearing, we have found that consideration of other postconviction claims at this time is premature. *People v. Edgecombe*, 2011 IL App (1st) 092690, ¶ 31. For example, in *Edgecombe*, as in this case, both parties agreed that the case needed to be remanded for resentencing. *Edgecombe*, 2011 IL App (1st) 092690, ¶ 15. In *Edgecombe*, as in this case, the defendant had made other claims in his postconviction petition that attacked the validity of his conviction and, based on those claims, he sought a new trial. *Edgecombe*, 2011 IL App (1st) 092690, ¶ 12. After explaining why we agreed with the parties on the

need for resentencing, we remanded the *Edgecombe* case for resentencing but declined to consider the defendant's other postconviction claims at that time. *Edgecombe*, 2011 IL App (1st) 092690, ¶ 31.

¶ 6    We explained, first, that since a defendant has a right to file a direct appeal " 'from sentences entered on conviction,' " the defendant may choose to file, instead, "a direct appeal after the entry of the new sentencing order." *Edgecombe*, 2011 IL App (1st) 092690, ¶ 31 (quoting 730 ILCS 5/5-5-4.1 (West 2008)).  See also 730 ILCS 5/5-5-4.1 (West 2018) ("The defendant has the right of appeal in all cases from sentences entered on conviction" in felony cases); *People v. Lopez*, 129 Ill. App. 3d 488, 491 (1984) ("Final judgment in a criminal case is not entered until the imposition of the sentence.  The final judgment in a criminal case is the sentence.").

¶ 7    Second, we explained that, "[s]ince defendant may decide not to pursue these claims depending on the outcome of his resentencing, it is in the interest of judicial economy for us not to address [postconviction] claims prematurely." *Edgecombe*, 2011 IL App (1st) 092690, ¶ 31.  We observe that, in the case at bar, it has been 16 years since the offense, and the 25-year firearm enhancement will no longer be mandatory at defendant's resentencing. 730 ILCS 5/5-4.5-105(b) (West 2016).  Thus, depending on what his new sentence is, defendant

may or may not decide to pursue his remaining claims. *Edgecombe*, 2011 IL App (1st) 092690, ¶ 31.

¶ 8 Below, we discuss the reasons that require a new sentencing hearing. With respect to his other claims, we find, as we did in *Edgecombe*, that "[o]ur action today does not affect the [other] claims that defendant made." *Edgecombe*, 2011 IL App (1st) 092690, ¶ 31.

¶ 9 BACKGROUND

¶ 10 The 17-year-old defendant was convicted of first-degree murder in connection with the drive-by shooting of Troy Wilson on August 7, 2004. The primary issue at his bench trial was the identity of the shooter. Clarence Lang, who was a passenger in the vehicle from which the shots were fired, testified that defendant was the shooter. Defendant did not testify. Brenda Chandler, a bystander, testified that defendant was the shooter, although she had previously informed police on the scene that she did not know who the shooter was. Chandler testified that defendant was in the front passenger seat and Lang was in the back seat. Lang's girlfriend, Latrice Smith, also testified that defendant was the shooter; and that defendant was in the front passenger seat, while Lang was in the back seat. During closing argument, the State argued that defendant was the shooter, while the defense argued that Lang was the shooter. Primarily

on the basis of the three eyewitnesses (Lang, Chandler and Smith) who all knew defendant prior to the shooting, the trial court found defendant guilty.[1]

¶ 11    At the sentencing hearing on September 28, 2006, the State presented, in aggravation, a victim impact statement from the victim's mother; and the defense called, in mitigation, defendant's grandmother.    Defendant's grandmother testified that she had raised the 17-year-old defendant since he was 8 months old, that he had been a B or C student in school, that he was not a gang member, and that she had arranged for a police officer to mentor defendant, not because defendant had been in trouble, but "to keep him straight."    The State observed, in response, that witnesses had testified at trial that defendant was a gang member.

¶ 12    The presentence investigation report (PSI) showed that defendant had not been arrested as a juvenile and that he had been sentenced to only one day as an adult for criminal trespass to state land.    Defendant denied any gang involvement, past or present, and reported that, while he had little contact with his parents, he had "a great life" with his grandmother, who was a Chicago public school teacher.    Although a B or C student, he withdrew from school in

---

[1] This court already described the evidence at trial twice, and we will not repeat that description again here.  We incorporate our prior orders by reference. *People v. Erves*, No. 1-07-0333, slip order at 2-8 (2008) (unpublished order pursuant to Supreme Court Rule 23) (describing the evidence at trial); *People v. Erves*, 2012 IL App (1st) 112813-U, ¶¶ 5-20 (describing the evidence at trial).

his junior year of high school. Prior to his arrest, he had worked for cash part-time at a car wash; he had attended a Baptist church; he had never been married; he had no children; and he denied any drug or alcohol abuse. Defendant had one tattoo, which was Psalm 23.

¶ 13    The parties agreed that the minimum possible sentence was 45 years. The sentencing range for the murder was 20 to 60 years, plus an additional minimum of 25 years due to a mandatory firearm enhancement. The defense argued for the minimum, arguing that, even with the 45-year minimum, his client would not be released until age 65, "if he is released." In response, the State argued that "this is not a minimum case," in part, because of the very nature of a drive-by shooting.

¶ 14    The trial court stated that it had "considered the arguments of counsel, in aggravation and mitigation, as well as the evidence presented both in aggravation and mitigation, the information that has been provided to me in the presentence investigation," "the facts of the case," and defendant's allocution. Without a reference to defendant's age or to any other factors, the trial court sentenced defendant to 30 years for the murder, plus a 25-year firearm enhancement, for a total of 55 years with IDOC.

¶ 15     On January 4, 2007, defense counsel moved for a reduction in sentence on the ground that "this is a young man who essentially was without a criminal history." The trial court denied the motion, finding:

> "THE COURT: The fact of the matter is that the sentencing range is from 20 to 60 and I sentenced the defendant to 10 years over the minimum term.
>
> The legislature has enacted a law that upon [a] certain finding of fact by the trier of fact that these additional penalties must be imposed. So basically I sentenced defendant to 10 years over the minimum which is 30 years. I followed the law."

¶ 16     On direct appeal, defendant claimed that the trial court erred in permitting a potentially exonerating witness to invoke a fifth-amendment privilege against self-incrimination.[2] This court found that, since the witness had "a reasonable fear of criminal sanctions, this court cannot say that the trial court abused its discretion by allowing" him to invoke his fifth amendment privilege. *Erves*, No. 1-07-0333, slip order at 18.

---

[2] Larry Chatman had been subpoeaned as a trial witness by the defense and had appeared at trial with his own attorney. Defendant's counsel stated, in an offer of proof, that Chatman and Lang had had a conversation in a trial judge's "bullpen" on March 7, 2006, during which Lang admitted to Chatman that he was the shooter. *Erves*, No. 1-07-0333, slip order at 6-7.

¶ 17    After defendant's conviction was affirmed on direct appeal, he filed a *pro se* postconviction petition alleging actual innocence and ineffective assistance of counsel.[3]    After the trial court dismissed his petition at the second stage, this court reversed and remanded for a third-stage evidentiary hearing. *Erves*, 2012 IL App (1st) 112813-U, ¶ 1.

¶ 18    On December 17, 2014, prior to the evidentiary hearing, defendant filed a supplemental petition challenging the constitutionality of his 55-year sentence as a *de facto* life sentence pursuant to *Miller* and its progeny. Defendant observed that he was required to serve 100% of his sentence and that he was currently scheduled to be released on October 30, 2059, at age 73, "if" he lived that long.  After the hearing, the trial court denied defendant's motions for both a new trial and a new sentencing hearing.  The trial judge who presided over defendant's postconviction proceedings was the same judge who had presided over defendant's bench trial and sentencing hearing.

¶ 19    In denying defendant's motion for resentencing, the trial court found that defendant's 55-year sentence was "not a *de facto* natural life sentence."  In support of that finding, the trial court observed that "our appellate courts have set no bright line or rule as to a specific number where a court can state that an

---

[3] When the parties refer to this petition in their briefs to this court, they cite the trial court's orders dismissing the petition, rather than the petition itself.  The petition itself does not appear to be in the record before us.  Since we are not considering these claims at this time, its absence does not affect our opinion.

exact number of years is a *de facto* natural sentence" and that this issue "will have to ultimately be decided by the Supreme Court." The trial court made this observation on April 20, 2017; and two years later, on April 18, 2019, our supreme court chose to establish that bright line in *People v. Buffer*, 2019 IL 122327, ¶¶ 40-41, finding that a sentence over 40 years was a *de facto* life sentence.

¶ 20    On April 20, 2017, defendant filed a notice of appeal, and this timely appeal followed.

¶ 21                              ANALYSIS

¶ 22                        I. Postconviction Stages

¶ 23    Defendant seeks relief under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2018)), which provides for three stages of review by the trial court. *People v. Domagala*, 2013 IL 113688, ¶ 32. At the first stage, the trial court may summarily dismiss a petition only if it is frivolous or patently without merit. 725 ILCS 5/122-2.1(a)(2) (West 2018); *Domagala*, 2013 IL 113688, ¶ 32.

¶ 24    At the second stage, counsel is appointed if a defendant is indigent. 725 ILCS 5/122-4 (West 2018); *Domagala*, 2013 IL 113688, ¶ 33. After counsel determines whether to amend the petition, the State may file either a motion to dismiss or an answer to the petition. 725 ILCS 5/122-5 (West 2018);

*Domagala*, 2013 IL 113688, ¶ 33. At the second stage, the trial court must determine "whether the petition and any accompanying documentation make a substantial showing of a constitutional violation." *People v. Edwards*, 197 Ill. 2d 239, 246 (2001).

¶ 25     If the defendant makes a "substantial showing" at the second stage, then the petition advances to a third-stage evidentiary hearing. *Domagala*, 2013 IL 113688, ¶ 34. At a third-stage evidentiary hearing, the trial court acts as factfinder, determines witness credibility and the weight to be given particular testimony and evidence, and resolves any evidentiary conflicts. *Domagala*, 2013 IL 113688, ¶ 34. In this appeal, the petition was dismissed at the third stage after an evidentiary hearing.

¶ 26                    II. Standard of Review

¶ 27     When an issue at a third-stage evidentiary hearing involves fact-finding and credibility determinations, we will not reverse the trial court's finding on that issue, unless the finding is manifestly erroneous. *People v. Williams*, 2017 IL App (1st) 152021, ¶ 22. However, if an issue involved no fact-finding or credibility determinations, then our review is *de novo*. *People v. Andrews*; 403 Ill. App. 3d 654, 659 (2010) ("Our review of a third-stage dismissal is *de novo*, when, as here, no fact finding or credibility determinations are involved.") (citing *People v. Pendleton*, 223 Ill. 2d 458, 473 (2006)); *Williams*, 2017 IL

App (1st) 152021, ¶ 22. The question of whether defendant's 55-year sentence is a *de facto* life sentence under *Miller* and its progeny is a pure question of law, to which we apply a *de novo* standard of review.

¶ 28 *De novo* consideration means that a reviewing court performs the same analysis that the trial court would perform. *People v. Williams*, 2020 IL App (1st) 162412, ¶ 72.

¶ 29 III. Effect of *Buffer*

¶ 30 The trial court's finding that 55 years is not a *de facto* life sentence is indisputably error, in hindsight. See *Buffer*, 2019 IL 122327, ¶¶ 40-41 (a sentence over 40 years is a *de facto* life sentence). As this court has stated before, we "do not mean to impugn the abilities or conscientiousness of the judge below." *People v. DiCorpo*, 2020 IL App (1st) 172082, ¶ 57. Rather, we are aware that the law regarding juvenile and young adult sentencing has been "a rapidly evolving area of the law, and the court below did not have the benefit of our supreme court's more recent cases in this area such as *Buffer*," as well as our own recent cases. *DiCorpo*, 2020 IL App (1st) 172082, ¶ 57.

¶ 31 Having found error, we then turn to the issue of relief.

¶ 32 The State joins defendant in arguing that defendant is "entitled" to a new sentencing hearing. Exercising *de novo* review, we reach the same conclusion, for the following reasons.

11

¶ 33        The supreme court case of *Buffer* is remarkably similar to the case at bar. In *Buffer*, as in our case, the juvenile defendant was found guilty of first-degree murder and of personally discharging the firearm that caused the victim's death. In *Buffer*, as in our case, the defendant faced a sentencing range of 20 to 60 years for the murder, as well as a mandatory minimum 25-year firearm enhancement, resulting in a mandatory minimum sentence of 45 years. In *Buffer*, and similar to our case, the sentencing court stated that it had considered "all of the relevant" information before it and sentenced defendant to more than the minimum. *Buffer*, 2019 IL 122327, ¶ 46. The total sentence in *Buffer* was 5 years over the minimum, whereas in our case it was 10 years over the minimum. *Buffer*, 2019 IL 122327, ¶ 5. In *Buffer*, as in our case, the defendant raised a *Miller* challenge to his sentence in a postconviction petition, claiming that his sentence was a *de facto* life sentence. *Buffer*, 2019 IL 122327, ¶ 7.

¶ 34        The *Buffer* court found that, "to prevail on a claim based on *Miller* and its progeny, a defendant sentenced for an offense committed while a juvenile must show that (1) the defendant was subject to a life sentence, mandatory or discretionary, natural or *de facto*, and (2) the sentencing court failed to consider youth and its attendant characteristics in imposing the sentence." *Buffer*, 2019 IL 122327, ¶ 27. As discussed above, defendant has already established the first prong of this test.

¶ 35    With respect to the second prong, the *Buffer* court found no need to remand for further postconviction proceedings, since no additional "factual development" was needed to find that prong satisfied. *Buffer*, 2019 IL 122327, ¶ 46. The supreme court observed that the record already established that, while the trial court had considered all the then-relevant statutory factors, the trial court had not "considered defendant's youth and its attendant characteristics." *Buffer*, 2019 IL 122327, ¶ 46. Thus, the court remanded directly for a resentencing. *Buffer*, 2019 IL 122327, ¶¶ 46-47.

¶ 36    By contrast, in the recent case of *People v. Lusby*, 2020 IL 124046, ¶ 52, the supreme court found that there was no need for resentencing, even though the case involved a juvenile defendant who was sentenced before *Miller* was even decided.

¶ 37    In *Lusby*, 2020 IL 124046, ¶ 35, the supreme court explained "how" a reviewing court, such as ourselves, should determine whether a prior sentencing hearing comported with *Miller* and "its requirements." Our supreme court found that "the inquiry looks back to the trial and the sentencing hearing to determine whether the trial court at that time considered evidence and argument *related* to the *Miller* factors." (Emphasis added.) *Lusby*, 2020 IL 124046, ¶ 35. The supreme court stated that the *Miller* factors " 'include, but are not limited to, the following factors: (1) the juvenile defendant's chronological age at the

time of the offense and evidence of his particular immaturity, impetuosity, and failure to appreciate risks and consequences; (2) the juvenile defendant's family and home environment; (3) the juvenile defendant's degree of participation in the homicide and any evidence of familial or peer pressure that may have affected him; (4) the juvenile defendant's incompetence, including his inability to deal with police officers or prosecutors and his incapacity to assist his own attorneys; and (5) the juvenile defendant's prospects for rehabilitation.' " *Lusby*, 2020 IL 124046, ¶ 34 (quoting *People v. Holman*, 2017 IL 120655, ¶ 46).

¶ 38        Similar to *Buffer* and unlike *Lusby*, the record before us shows that the trial court did not consider youth and its attendant circumstances.

¶ 39        In the case at bar, the trial court stated at the sentencing hearing that it had "considered the arguments of counsel, in aggravation and mitigation, as well as the evidence presented both in aggravation and mitigation, the information that has been provided to me in the presentence investigation," "the facts of the case," and defendant's allocution. However, the court made no reference to defendant's age or to any youth-related factors before imposing sentence.

¶ 40        When the defense subsequently moved for a reduction in sentence on the ground that "this is a young man who essentially was without a criminal

14

history," the trial court denied the motion, finding that it had sentenced defendant to only 10 years over the minimum and had "followed the law."

¶ 41    During the postconviction proceedings, the trial court denied defendant's *Miller* claim on the ground that defendant's 55-year sentence was "not a *de facto* natural life sentence," thereby indicating that it did not intend to impose a life sentence on this juvenile defendant.

¶ 42    From our own independent review of all three proceedings before the sentencing judge, namely, the original sentencing hearing, the subsequent motion to reduce sentence, and the postconviction proceeding, it is evident that the *Miller*-related factors were not considered before imposing what is now adjudged to be a *de facto* life sentence.

¶ 43    The *Buffer* court found that "the proper remedy is to vacate defendant's sentence and to remand for a new sentencing hearing." *Buffer*, 2019 IL 122327, ¶ 47. The supreme court "[f]urther" found "that defendant is entitled on remand to be sentenced under the scheme prescribed by section 5-4-105 of the United Code of Corrections." *Buffer*, 2019 IL 122327, ¶ 47 (referring to 730 ILCS 5/5-4.5-105 (West 2016)).

¶ 44    As in *Buffer*, we vacate defendant's sentence and remand for a new sentencing hearing, in accord with the new statutory scheme.

¶ 45    On remand, the sentencing court may impose a *de facto* life sentence " 'only if the trial court determines that the defendant's conduct showed irretrievable depravity, permanent incorrigibility, or irreparable corruption beyond the possibility of rehabilitation.' " *Lusby*, 2020 IL 124046, ¶ 34 (quoting *Holman*, 2017 IL 120655, ¶ 46).    The trial court may make an appropriate sentencing decision " 'only after considering the defendant's youth and its attendant characteristics.' "    *Lusby*, 2020 IL 124046, ¶ 34 (quoting *Holman*, 2017 IL 120655, ¶ 46).    The factors it must consider are now codified. 730 ILCS 5/5-4.5-105 (West 2016). Under the new scheme, the firearm enhancement is no longer mandatory.    730 ILCS 5/5-4.5-105(b) (West 2016) (the sentencing court "may, in its discretion, decline to impose any otherwise applicable sentencing enhancement based upon firearm possession").

¶ 46                              CONCLUSION

¶ 47    For the foregoing reasons, we vacate defendant's sentence and reverse and remand for a new sentencing hearing, with directions.

¶ 48    Sentence vacated; remanded for resentencing, with directions.

---

**No. 1-17-1135**

---

| | |
|---|---|
| **Cite as:** | *People v. Erves*, 2020 IL App (1st) 171135 |

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 04-CR-29140; the Hon. William G. Lacy, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | James E. Chadd, Douglas R. Hoff, and Pamela Rubeo, of State Appellate Defender's Office, of Chicago, for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Kimberly M. Foxx, State's Attorney, of Chicago (Alan J. Spellberg, and Whitney Bond, Assistant State's Attorneys, of counsel), for the People. |

---