2023 IL App (1st) 220469-U

SECOND DIVISION
December 5, 2023

No. 1-22-0469

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 00 CR 609 |
| | ) | |
| RAYMOND ORTIZ, | ) | Honorable |
| | ) | Carol M. Howard, |
| Defendant-Appellant. | ) | Judge Presiding. |

_____

JUSTICE McBRIDE delivered the judgment of the court.
Presiding Justice Howse and Justice Ellis concurred in the judgment.

**ORDER**

¶ 1  *Held*:  The trial court did not abuse its discretion in sentencing defendant to an aggregate term of 40 years after considering the relevant mitigating factors related to his youth and attendant circumstances.

¶ 2  Defendant Raymond Ortiz appeals from the trial court's denial of his motion to reconsider his sentence following this court's summary remand for a new sentencing hearing to consider defendant's youth and attendant circumstances. Specifically, defendant argues that his 40-year aggregate sentence for first degree murder and armed robbery is excessive because he

was 17 years old at the time the offenses were committed and there were substantial mitigating factors.

¶ 3     Following a 2002 bench trial, defendant was convicted of multiple counts, including first degree murder and armed robbery, arising out of the December 1999 fatal shooting of James Anthony Bittner. In March 2017, defendant filed his *pro se* postconviction petition challenging his sentence as unconstitutional under *Miller v. Alabama*, 567 U.S. 460 (2012), which the trial court summarily dismissed at the first stage. On appeal, this court entered an agreed order for summary remand, vacated defendant's 60-year aggregate sentence, and remanded for a new sentencing hearing in compliance with *People v. Buffer*, 2019 IL 122327, and section 5-4.5-105 of the Unified Code of Corrections (the Code) (730 ILCS 5/5-4.5-105 (West 2020)). In *Buffer*, the supreme court held that a sentence over 40 years is considered a *de facto* life sentence for juvenile defendants. *Buffer*, 2019 IL 122327, ¶ 41. Under section 5-4.5-105 of the Code, courts are now required to consider the youth-based sentencing factors set out in *Miller* whenever an individual under the age of 18 is sentenced, with the firearm enhancements to be discretionary, rather than mandatory. 730 ILCS 5/5-4.5-105 (West 2020).

¶ 4     At the new sentencing hearing, defendant presented mitigating evidence relating to his age, family life, drug addiction, as well as his rehabilitation while incarcerated. Following the hearing, the court imposed an aggregate sentence of 40 years.

¶ 5     Because this court previously detailed the evidence presented at defendant's trial in his initial direct appeal, we detail only those facts necessary for our disposition. See *People v. Ortiz*, No. 1-02-1247 (2003) (unpublished order under Supreme Court Rule 23).

¶ 6     Defendant was charged by indictment with multiple counts of first degree murder, aggravated vehicular hijacking, armed robbery, aggravated kidnapping, possession of a stolen

motor vehicle, burglary, and kidnapping. In March 2002, the trial court presided over defendant's bench trial. The State presented defendant's videotaped statement in which he admitted to shooting Bittner on December 2, 1999. This court recounted defendant's videotaped statement on direct appeal.

> "Defendant stated that his girlfriend, codefendant Victoria Woodrich, called him at midnight and asked him to go drinking with her and Bittner. Woodrich told defendant that Bittner had a nice car and car stereo and that she wanted defendant to help her rob Bittner at gunpoint. An hour later, Woodrich arrived with Bittner in Bittner's car. Over the next few hours, defendant, Woodrich, and Bittner drove around town and drank liquor together. They eventually stopped the car and joined two other people on a front porch in the neighborhood of Point Street and Chanay Street. At approximately 4 a.m., Woodrich whispered to defendant to take Bittner to the alley because he had to urinate, and to shoot him so Woodrich and defendant could leave. Defendant stated that he walked Bittner to the alley, and when Bittner turned around to relieve himself, defendant shot him from a distance of seven to nine feet. Defendant ran down the alley to Point Street and then to California Avenue where Woodrich picked him up in Bittner's car. Woodrich and defendant drove to an abandoned garage where they hid the car's stereo equipment. Woodrich took several compact discs from the car, gave defendant two of the discs, and used Bittner's cellular phone, which was also in the car." *Id*. at 1-2.

¶ 7     The parties stipulated that Douglas Tepp would testify consistently with his grand jury testimony. Before the grand jury, Tepp testified that he was with defendant, Woodrich, and

Bittner on the morning of December 2, 1999. Defendant asked Bittner to walk with him to the alley and "watch his back" while he urinated. Defendant helped Bittner walk to the alley because Bittner was intoxicated. Shortly thereafter, Tepp heard gunshots and saw defendant running from the alley. Woodrich had driven away in Bittner's car.

¶ 8    Defendant testified on his own behalf. According to defendant, he spent the day alone near North California Avenue and West Armitage Avenue. He did not meet up with Woodrich until around 4 a.m. on December 2, 1999, near 2100 North Point Street. There were a few other people around, but he did not remember anyone's name. He got into an argument with Bittner over defendant "messing around" and sitting on Bittner's car. They got into a "little tussle, a little fight." Woodrich calmed the fight down, but Bittner continued to make verbal threats toward defendant. Defendant admitted he was intoxicated.

¶ 9    After the fight, Woodrich told defendant to shoot Bittner or she would have defendant killed. Defendant denied having a gun that night, but he later obtained one when a man came by and wanted to sell a gun. Woodrich mentioned robbing Bittner, but defendant was not "focused on that." Defendant shot Bittner in an alley because he "was forced to" and was "threatened" by Woodrich.

¶ 10    Defendant testified that his videotaped statement was a lie. He said that he gave the statement after the police officers "beat" him. The officers forced defendant to rehearse the statement "five or six" times.

¶ 11    At the conclusion of the trial, the trial court found defendant guilty of all counts. The court subsequently sentenced defendant to 45 years for first degree murder; 30 years for aggravated vehicular hijacking based on use of a dangerous weapon; 30 years for armed robbery; 30 years for aggravated kidnapping; 7 years for possession of a stolen motor vehicle; 7 years for

burglary; and 7 years for kidnapping. The trial court ordered all sentences to run concurrently for an aggregate sentence of 45 years.

¶ 12    On direct appeal, defendant argued that the State failed to prove him guilty of aggravated kidnapping or kidnapping beyond a reasonable doubt, and that several of his convictions and sentences violated the one-act, one-crime rule. In response, the State asserted that the trial court's sentencing order was void because the court failed to impose mandatory consecutive sentences. *Id*. at 4. This court affirmed defendant's convictions for intentional first degree murder, armed robbery, and burglary; reversed defendant's convictions for aggravated kidnapping, aggravated vehicular hijacking, and kidnapping, vacated the counts of knowing and felony first degree murder and possession of a stolen motor vehicle. We further vacated defendant's concurrent sentences for first degree murder and armed robbery and remanded for the imposition of consecutive sentences. *Id*. at 12.

¶ 13    On remand, the trial court conducted a new sentencing hearing and heard arguments in aggravation and mitigation. The court again imposed a 45-year term for first degree murder but reduced the term for armed robbery from 30 to 15 years. The trial court ordered these two terms to be consecutive for an aggregate term of 60 years, as ordered by this court on remand. Defendant filed a motion to reconsider his sentence, which the trial court denied. Defendant appealed, arguing that the 15-year increase in his sentence violated his due process rights, and this court affirmed defendant's sentence. *People v. Ortiz*, No. 1-04-0031, at 1 (2005) (unpublished order under Supreme Court Rule 23).

¶ 14    In March 2017, defendant filed his *pro se* postconviction petition arguing that his 60-year sentence was an unconstitutional *de facto* life sentence under both the eighth amendment to the United States Constitution (U.S. Const., amend. VIII) and the proportionate penalties clause of

the Illinois Constitution (Ill. Const. 1970, art. I, § 11). Relying on recent caselaw following the United States Supreme Court's decision in *Miller v. Alabama*, 567 U.S. 460 (2012), defendant asserted that because he was 17 years old at the time of the commission of the offenses, his sentence should be vacated, and the case remanded for a new sentencing hearing. In April 2017, the trial court dismissed defendant's petition as frivolous and patently without merit. On appeal, this court entered an agreed order for summary remand which vacated defendant's sentence and remanded for a new sentencing hearing in compliance with with *Buffer*, 2019 IL 122327, and section 5-4.5-105 of the Code (730 ILCS 5/5-4.5-105 (West 2020)).

¶ 15    On remand, the trial court conducted a new sentencing hearing in December 2021. In mitigation, defendant submitted a mitigation report prepared by Helen Kim Skinner, a private mitigation specialist. She spent over 100 hours on this case, including 8 hours interviewing defendant and over 25 phone calls with him, interviewing individuals who knew defendant, reviewing defendant's records, and researching relevant articles and literature.

¶ 16    In the report, Skinner detailed defendant's childhood. Defendant's parents were married, but separated when he was a baby. His father was often absent from his life. Defendant's father would visit occasionally. Defendant's father died following a car accident when defendant was seven or eight years old. After his father's death, defendant's mother became "inconsolable" and increased her drug use. His mother had been a "functional addict", but she started to openly use drugs in front of defendant and his brother. Defendant's mother also physically abused him, including striking him with clothes hangers. Defendant was also sexually abused by a man dating his mother for "a period of years."

¶ 17    When defendant was in third or fourth grade, he befriended an older boy who was a member of the Latin Kings gang and began spending time with the gang. Defendant first smoked

marijuana when he was 9 or 10 years old and quickly began to smoke every day. He also started to drink alcohol. Defendant's school records from Chicago Public Schools indicated that defendant received special education due to "behavior/emotional disorder, moderate." He was expelled from high school after a fight during his freshman year. Later, defendant's mother died in February 1999 from cirrhosis of the liver. Defendant was homeless following his mother's death and began spending more time with the Latin Kings. He met Woodrich at a friend's house when she was 20 and he was 16. He started smoking PCP with Woodrich and used it daily until his arrest.

¶ 18     The report also detailed defendant's recounting of the night of the shooting to Skinner. Defendant was drinking alcohol and partying with Woodrich, Bittner, and another woman. Woodrich left with Bittner to get food. When they returned, Woodrich went into the bathroom and shut the door. He went to the door and Woodrich was crying and hysterical. Defendant said he felt "that something sexual happened" between Woodrich and Bittner, but he did not know if Bittner sexually assaulted Woodrich or if she had cheated on defendant with Bittner and felt guilty. Woodrich then said, "Shoot his ass." Defendant felt enraged and took the gun from Woodrich. He went to confront Bittner and saw him standing near the alley. Defendant pointed the gun at Bittner and shot him within seconds. Woodrich then took Bittner's car keys and they left in Bittner's car.

¶ 19     While incarcerated, defendant has participated in many courses. He obtained his GED in 2004 and took other classes, including anger management, anxiety management, and men's issues. He worked in many positions in prison, including a painter, barber, and maintenance worker. Defendant denounced his membership in the Latin Kings in 2007 and suffered a violent attack by gang members. The mitigation report also attached copies of the certificates defendant

7

earned in prions, including science and reading achievement and substance abuse awareness. Additionally, multiple letters were attached attesting to defendant's character and rehabilitation. Defendant also included a letter addressed to Bittner's family apologizing for his actions and seeking forgiveness. Defense counsel argued that defendant had sought protective custody because of a "kill on-site order" after leaving the gang. Counsel further argued that defendant's potential for rehabilitation was "great."

¶ 20    The State argued in aggravation that defendant and Woodrich were members of the Latin Kings at the time of the offenses. Woodrich devised the plan to rob Bittner at gunpoint and defendant joined in the plan. The State further observed that defendant has given three different versions of the circumstances of the shooting. In his videotaped statement, defendant admitted to planning the robbery with Woodrich, but then at trial, he testified that Woodrich forced him to shoot Bittner. Then in the mitigation report, defendant stated that he shot Bittner because he believed Bittner had sexually assaulted Woodrich.

¶ 21    At the end of the hearing, defendant read a letter in allocution. He recounted his troubled childhood including his father's death, his sexual abuse, and his mother's drug use and death. His role model was a gang member he looked up to. He was selling and using drugs on a daily basis. His life "really crashed" when he found his mother dead. He coped by using more drugs, including PCP and cocaine. He met and fell in love with Woodrich, who was four years older than he was. He has not used drugs since 2000 or had alcohol since 2001. He noted that he has maintained "an okay disciplinary record" over the past 20 years. He stated that he loved to work and was never fired or received any tickets related to his job assignments. If he was able to be released, his goal was to open a barber shop and obtain a business management degree. He also would like to mentor troubled youth and become a community activist against guns, drugs, and

violence.

¶ 22    Defendant asked the court to impose the minimum statutory sentence of 20 years for first degree murder and 6 years for armed robbery. The State recommended a discretionary life sentence. Following arguments, the trial court entered its findings. The court stated that it was not going to impose a firearm enhancement. The court made the following findings on the record.

> "I've considered all the evidence presented in this case. I've considered the factors in aggravation, which are the crime itself. And I've considered the factors in mitigation. The defendant was 17 years of age. He appeared to have been acting under the influence of an older person. The defendant's family and home environment was just very, very poor and not supportive of him in any way and also he was abused in that environment.
>
> Number 4 under the factors set forth in 730 ILCS 5/5-4.5-105 indicate that the Court should consider the defendant's potential for rehabilitation. When I look at the video statement that he gave, initially it does appear that even at that very early stage he was remorseful. He freely admitted that he shot the complaining witness. He explained the plan of how it came about and he was crying throughout that interview. So I'm persuaded that even early on he felt and expressed remorse for what happened.
>
> Number 5 talks about the circumstances of the offense. And as I noted earlier, the circumstances of the offense are clearly aggravating. He made a choice to go along with Victoria Woodrich's suggestions. Yes, he was young but he still was the one that followed the complaining witness, or the deceased, down the

alley and shot him. He is the one that pulled the trigger. That certainly is aggravating. His role in the offense clearly was great.

Going further down the list set [forth] in 730 ILCS 5/5-4.5 indicates that the Court should consider the defendant's prior juvenile criminal history. The [presentence investigation (PSI)] that has been submitted by the parties indicates that he did not have much of a juvenile history at all. He had been adjudicated a delinquent for the offense of robbery in Case No. 98-JD-4763.

\* \* \*

Considering all the factors set [forth] in 730 ILCS 5/5-4.5-105, this Court finds that the sentence of 30 years in the Illinois Department of Corrections on the murder charge and a sentence of 10 years on the armed robbery charge to run consecutive to the 30-year sentence on the murder charge is appropriate. The burglary sentence will remain as it currently is, and that burglary sentence will run concurrent with the armed robbery sentence."

¶ 23   In February 2022, defendant filed a motion to reconsider his aggregate sentence of 40 years. Defendant argued that the trial court did not consider all of the *Miller* factors in its ruling. He further contended that the court "ignored significant mitigation, remorse and peer pressure." According to defendant, the court improperly considered matters in aggravation that are implicit in the offense. Defendant maintained that he should have received the minimum sentence based on his extensive mitigation. In March 2022, following a hearing, the trial court denied defendant's motion to reconsider. The court found the sentence imposed pursuant to *Buffer* was appropriate. The court further observed that it did not follow the State's recommendation of a discretionary life sentence because of defendant's remorse and the evidence in mitigation.

¶ 24     This appeal followed.

¶ 25     On appeal, defendant argues that the trial court abused its discretion in imposing the aggregate sentence of 40 years. Specifically, defendant asserts that the sentence is excessive in light of his youth at the time of the offenses, his childhood, his drug use, his remorse, and his demonstrated rehabilitation in prison. The State maintains that the trial court did not abuse its discretion by imposing a sentence on the lower end of the applicable sentencing range.

¶ 26     "The trial court has broad discretion in imposing an appropriate sentence, and where, as here, that sentence falls within the range provided by statute, it will not be altered absent an abuse of discretion." *People v. Vega*, 2018 IL App (1st) 160619, ¶ 60. In determining an appropriate sentence, the trial judge is required to consider all factors in aggravation and mitigation. *People v. Evans*, 373 Ill. App. 3d 948, 967 (2007). "A sentence will be deemed an abuse of discretion where the sentence is 'greatly at variance with the spirit and purpose of the law, or manifestly disproportionate to the nature of the offense.' " *People v. Alexander*, 239 Ill. 2d 205, 212 (2010) (quoting *People v. Stacey,* 193 Ill. 2d 203, 210 (2000)).

¶ 27     The applicable statutory sentencing framework is as follows. The sentencing range for first degree murder is 20 to 60 years in prison. 730 ILCS 5/5-4.5-20(a) (West 2020). Armed robbery is a Class X felony and has a sentencing range of 6 to 30 years. 720 ILCS 5/18-2(b) (West 2020); 730 ILCS 5/5-4.5-25(a) (West 2020). Defendant was subject to mandatory consecutive sentencing because one of the convicted offenses was first degree murder. 730 ILCS 5/5-8-4(d)(1) (West 2020). Accordingly, the minimum sentence defendant could have received was 20 years for first degree murder and 6 years for armed robbery, for a total sentence of 26 years. As discussed above, defendant received 30 years for first degree murder and 10 years for armed robbery, for a total sentence of 40 years. Since defendant received a sentence well within

the sentencing range for each offense, his sentence is presumed to be proper. *People v. Villalobos*, 2020 IL App (1st) 171512, ¶ 73.

¶ 28     Additionally, the State observes that while defendant's aggregate sentence is 40 years, his actual time in prison is 35 years. The supreme court has held that any day-for-day credit must be deducted when determining whether a lengthy, term-of-years sentence qualifies as a *de facto* life sentence under *Buffer*. *People v. Dorsey*, 2021 IL 123010, ¶ 65. Pursuant to the truth-in-sentencing statute, a person serving a term of imprisonment for first degree murder "shall receive no good conduct credit and shall serve the entire sentence imposed by the court." 730 ILCS 5/3-6-3(a)(2)(i) (West 2020). Thus, defendant must serve 100 percent of the 30-year sentence for first degree murder, but his consecutive 10-year sentence for armed robbery is to be served at 50 percent. See 730 ILCS 5/3-6-3(a)(2.1) (West 2020) ("a prisoner who is serving a term of imprisonment shall receive one day of sentence credit for each day of his or her sentence of imprisonment"). The State also notes that defendant is eligible for parole review after serving 20 years of his sentence. See 730 ILCS 5/5-4.5-115(b) (West 2020) ("A person under 21 years of age at the time of the commission of first degree murder who is sentenced on or after June 1, 2019 *** shall be eligible for parole review by the Prisoner Review Board after serving 20 years or more of his or her sentence or sentences"). Defendant does not dispute the State's observations.

¶ 29     Since defendant was 17 years old at the time of the commission of the offenses, additional consideration related to his age is relevant to our review of his sentence. The sentencing of juvenile and youthful offenders has been evolving in the country over the last several years. Beginning with *Roper v. Simmons*, 543 U.S. 551 (2005), the United States Supreme Court weighed in and set forth new constitutional parameters for the sentencing of

juvenile offenders. See also *Graham v. Florida*, 560 U.S. 48, 68 (2010); *Miller*, 567 U.S. at 479-80; *Montgomery v. Louisiana*, 577 U.S. 190, 210-213 (2016). "[T]he United States Supreme Court has advised that 'children are constitutionally different from adults for purposes of sentencing.' " *People v. Lusby*, 2020 IL 124046, ¶ 32 (quoting *Miller*, 567 U.S. at 471). "The Court outlawed capital sentences for juveniles who commit murder in *Roper* and capital sentences for juveniles who commit nonhomicide offenses in *Graham*. And in *Miller*, the Court barred mandatory life sentences for juveniles who commit murder." *Id. Miller* has since been held to apply retroactively. *Montgomery*, 577 U.S. at 210-212; see *People v. Davis*, 2014 IL 115595, ¶ 42 (recognizing that *Miller* applied retroactively).

¶ 30    The *Miller* Court

> "emphasized that a mandatory sentencing scheme for juveniles prevents the trial court from considering numerous mitigating factors, such as the juvenile offender's age and attendant characteristics; the juvenile's family and home environment and the circumstances of the offense, including the extent of the juvenile's participation and the effect of any familial or peer pressure; the juvenile's possible inability to interact with police officers or prosecutors or incapacity to assist his or her own attorneys; and 'the possibility of rehabilitation even when the circumstances most suggest it.' " *People v. Reyes*, 2016 IL 119271, ¶ 3 (quoting *Miller*, 567 U.S. at 477-78).

¶ 31    Following *Miller*, the General Assembly enacted section 5-4.5-105(a), which codified the mitigating factors to be considered by the trial court when sentencing a defendant who committed an offense when under the age of 18. Section 5-4.5-105(a) provides that a court shall consider:

"(1) the person's age, impetuosity, and level of maturity at the time of the offense, including the ability to consider risks and consequences of behavior, and the presence of cognitive or developmental disability, or both, if any;

(2) whether the person was subjected to outside pressure, including peer pressure, familial pressure, or negative influences;

(3) the person's family, home environment, educational and social background, including any history of parental neglect, physical abuse, or other childhood trauma;

(4) the person's potential for rehabilitation or evidence of rehabilitation, or both;

(5) the circumstances of the offense;

(6) the person's degree of participation and specific role in the offense, including the level of planning by the defendant before the offense;

(7) whether the person was able to meaningfully participate in his or her defense;

(8) the person's prior juvenile or criminal history; and

(9) any other information the court finds relevant and reliable, including an expression of remorse, if appropriate. However, if the person, on advice of counsel chooses not to make a statement, the court shall not consider a lack of an expression of remorse as an aggravating factor." 730 ILCS 5/5-4.5-105(a) (West 2020).

¶ 32 Here, defendant contends that the trial court abused its discretion because it failed to properly consider the mitigating factors of his youth and attendant characteristics. The State

maintains that the court properly considered the circumstances of defendant's case in relation to the statutory mitigating factors.

¶ 33    The trial court need not specifically identify and assign a value to each mitigating factor, and the existence of a mitigating factor does not obligate the trial court to impose the minimum sentence. *People v. Foster*, 2022 IL App (2d) 200098, ¶ 53. Absent some affirmative indication to the contrary, we presume the trial court considered all mitigating evidence before it. *Id.* This court will not substitute our judgment for that of the trial court merely because we would have weighed the mitigating factors differently. *Alexander*, 239 Ill. 2d at 213.

¶ 34    According to defendant, the trial court did not consider how the characteristics of his youth, other than Woodrich's influence, contributed to defendant's participation in the offenses. We disagree and find the record clearly shows that the trial court weighed all of the mitigating evidence in accordance with section 5-4.5-105(a). As detailed above, the trial court stated in its findings on the record that it considered all evidence in aggravation as well as the factors in mitigation. The court then discussed several of the mitigating factors set forth in section 5-4.5-105(a), including that defendant was 17 years of age, was under the influence of an older person, *i.e.*, Woodrich, and defendant's family and home environment was "just very, very poor and not supportive of him in any way and also he was abused in that environment." Further, the court considered defendant's potential for rehabilitation and observed that defendant was "remorseful" and "freely admitted that he shot" Bittner. The court stated that it was "persuaded that even early on [defendant] felt and expressed remorse for what happened." The court also noted that defendant "did not have much of a juvenile history at all."

¶ 35    The court found the circumstances of the crime were not mitigating and observed that defendant agreed to go along with Woodrich's suggestions and he followed Bittner into the alley

and shot Bittner. The court focused on the fact that defendant was "the one that pulled the trigger" and defendant's "role in the offense was clearly great." Additionally, at the hearing on defendant's motion to reconsider the sentence, the court stated that it had been "receptive" to defendant's argument that "his sentence should be reduced" and declined to impose the discretionary life sentence requested by the State. The court found that defendant had "demonstrated remorse and demonstrated a potential for rehabilitation."

¶ 36    We find the record demonstrates that the trial court explicitly and implicitly considered the mitigating evidence of defendant's youth and attendant characteristics and made more than a brief mention of these factors. There is nothing in the record that indicates the court did not consider or ignored the mitigating factors defendant presented. Rather, the court specifically stated that it considered all of the evidence presented for the statutory mitigating factors in reaching its decision. Since the trial court imposed a sentencing on the lower end of the sentencing range after reviewing the evidence in both aggravation and mitigation, we conclude that defendant's sentence was properly imposed and no abuse of discretion occurred.

¶ 37    We further find defendant's reliance on *People v. Hill*, 2022 IL App (1st) 171739-B, and *People v. McKinley*, 2020 IL App (1st) 191907, to be misplaced. In *Hill*, the defendant was convicted of two counts of first degree murder and one count of attempted first degree murder, which he committed at the age of 15. *Hill*, 2022 IL App (1st) 171739-B, ¶ 1. The defendant was sentenced to mandatory life in prison to run consecutively with a 30-year sentence for attempted murder. *Id*. The defendant subsequently filed a postconviction petition, including a claim that his life sentence was unconstitutional. The parties agreed that the defendant's sentence violated *Miller*. *Id.* At the resentencing hearing, the defendant presented significant evidence in mitigation, including testimony from multiple witnesses that the defendant was a "model inmate"

and that he maintained multiple jobs that required "the trust of officers." *Id.* ¶19. The trial court

also described the defendant's conduct as exemplary and "as good as anyone else's that I've ever

seen that has been in that long, quite frankly.' " *Id.* ¶ 20. The court then sentenced the defendant

to 54 years, and the defendant appealed, arguing his new sentence still violated *Miller. Id.* ¶ 1.

The reviewing court agreed and remanded the matter for a new resentencing hearing, finding that

the trial court minimized the "mountain of evidence" explaining the impact of the defendant's

"youth and circumstances on his criminal conduct and further explaining his ability as an adult to

conform his conduct with the law." *Id.* ¶ 4. The *Hill* court specifically found that the trial court

"failed to adequately consider" an expert witness's "express connection between [the

defendant's] youth and his commission of the offense." *Id.* ¶ 45.

¶ 38    In *McKinley*, the defendant shot and killed a man at the behest of his friend when he was

16 and was sentenced to 100 years in prison. *McKinley*, 2020 IL App (1st) 191907. The

defendant later filed a *habeas* petition in the federal court and the Seventh Circuit stayed the

*habeas* proceedings to allow the defendant the opportunity to pursue resentencing in a successive

postconviction in the state court. *McKinley v. Butler*, 809 F.3d 908, 914 (7th Cir. 2016). The

defendant filed for postconviction relief, which the trial court granted and ordered a new

sentencing hearing. *McKinley*, 2020 IL App (1st) 191907, ¶ 21. At the resentencing hearing, the

defendant presented five witnesses in mitigation, including a developmental psychology expert,

corrections officers, and two professors in the prison education programs. *Id.* ¶¶ 24-39. After

noting that it did not "believe" that a 40-year sentence was the equivalent of a *de facto* life

sentence and "the defendant was entitled to more time in the penitentiary than even a 40-year

sentence," the trial court sentenced the defendant to 39 years. *Id.* ¶ 52.

¶ 39    On appeal, the reviewing court found that the trial court's "brief, general references to

defendant's rehabilitation indicate that the trial judge disregarded the extent of defendant's rehabilitation and did not afford it adequate weight." *Id.* ¶ 78. The *McKinley* court concluded that "the sentencing ruling also demonstrated that the trial judge did not properly weigh other relevant factors" and "gave improper weight to the need to deter future criminal conduct." *Id.* ¶¶ 87, 89. The reviewing court reduced the defendant's sentence to 25 years in prison. *Id.* ¶ 91.

¶ 40    Here, in contrast with *Hill* and *McKinley*, no such improper weighing occurred. In this case, the trial court did not improperly disregard defendant's rehabilitative potential or mitigating evidence in favor of deterrence. Rather, as discussed above, the court explicitly found that defendant had demonstrated remorse and a potential for rehabilitation. The court acknowledged defendant's poor childhood as well as the influence from the older Woodrich. The court also was "receptive" to defendant's request for a reduction from his previous sentence of 60 years and imposed the lower aggregate term of 40 years. The court also declined to impose the 25-year firearm enhancement. Thus, defendant's sentence was not excessive and the trial court did not abuse its discretion.

¶ 41    Defendant further argues that the trial court improperly considered his role as the shooter in aggravation. The State responds that defendant has forfeited this claim for two reasons: (1) he failed to offer any argument on this claim, and (2) he failed to both make a contemporaneous objection at the sentencing hearing and assert the claim in his motion to reconsider.

¶ 42    Defendant's argument in his opening brief consists of two sentences.

> "And, in considering the nature of the offense, the trial court stated that it was aggravating that Ortiz was the shooter. However, that factor was not properly aggravating as the conduct was implicit in the offense of first-degree murder. *People v. Rissley*, 165 Ill. 2d 364, 390 (1995)."

18

¶ 43    In his reply brief, defendant contends that the assertion that he forfeited the claim should be rejected because the State did not cite any authority that "a concise argument with a single citation does not constitute sufficient argument." Defendant then asserts plain error review for the first time in a single sentence with a citation to one case.

> "The State also argues forfeiture based on the failure to raise this claim before, but plain error applies. *People v. Sanders*, 2016 IL App (3rd) 130511, ¶ 18 (the erroneous consideration of a factor inherent in the offense is second prong plain error)."

¶ 44    Illinois Supreme Court Rule 341(h)(7) requires an appellant to adequately develop his argument with citation to relevant authority. Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020). It is well settled that conclusory contentions unsupported by argument violate Rule 341(h)(7) and are deemed forfeited. *People v. Fretch*, 2017 IL App (2d) 151107, ¶ 132; see *People v. Rosalez*, 2021 IL App (2d) 200086, ¶ 170. "A reviewing court is entitled to have issues clearly defined with pertinent authority cited and cohesive arguments presented; this court is not a repository into which an appellant may foist the burden of argument and research; it is neither the function nor the obligation of this court to act as an advocate or search the record for error." *People v. Edwards*, 2012 IL App (1st) 091651, ¶ 29.

¶ 45    Defendant's contentions in both his opening and reply brief consist of single conclusory statements with a single citation. He offers no discussion of that authority and its applicability to his claim, nor does he offer any discussion regarding the trial court's alleged error and what remedy he seeks. Contrary to defendant's assertion, these are not "concise" arguments but rather conclusions with no argument that fail to comply with Rule 341(h)(7). Accordingly, defendant has forfeited this claim.

¶ 46    Based on the foregoing reasons, we affirm the decision of the circuit court of Cook

County.

¶ 47    Affirmed.