2024 IL App (1st) 210303-U

No. 1-21-0303

Order filed February 28, 2024

Third Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 20 CR 733 |
| | ) | |
| FERNANDO OLIVEROS, | ) | Honorable |
| | ) | Neera Walsh, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE LAMPKIN delivered the judgment of the court.
Presiding Justice Reyes and Justice D.B. Walker concurred in the judgment.

**ORDER**

¶ 1    *Held*: Defendant's first-stage petition for postconviction relief successfully stated the gist of a constitutional claim and the trial court's judgment dismissing defendant's petition is reversed.

¶ 2    Defendant Fernando Oliveros is currently serving a 90-year sentence in the Illinois Department of Corrections (IDOC) subsequent to convictions for numerous counts of predatory criminal sexual assault, aggravated criminal sexual abuse, and aggravated child pornography. Defendant now appeals the trial court's dismissal of his *pro se* first-stage petition for

postconviction relief pursuant to the Post-Conviction Hearing Act (the Act), 725 ILCS 5/122-1 *et seq.* (West 2020).

¶ 3    For the reasons that follow, we reverse the judgment of the trial court and remand for second-stage proceedings and the appointment of counsel.[1]

¶ 4                                    I. BACKGROUND

¶ 5    On January 11, 2013, defendant was charged by indictment with six counts of predatory criminal sexual assault, seven counts of aggravated child pornography, seven counts of aggravated sexual abuse of a child, and seven counts of child pornography, all taking place over a period of approximately seven and a half years between May 7, 2005, and October 4, 2012. Following a bench trial, the trial court found defendant guilty of all charges and subsequently sentenced defendant to an aggregate term of 100 years in the Illinois Department of Corrections (IDOC). On appeal, we vacated defendant's conviction for one of the predatory criminal sexual assault counts, but otherwise affirmed the judgment of the trial court. *People v. Oliveros*, 2019 IL (1st) 161096-U, ¶ 2. Upon resentencing, defendant's sentence was reduced to 90 years. Our prior decision set forth the trial evidence in detail, so we will repeat only what is necessary for the instant appeal.

¶ 6    The trial court held a hearing on defendant's motion to suppress evidence on October 26, 2015. That motion claimed that defendant's cellphone had been unlawfully searched without a warrant. Araceli Del Pilar, defendant's girlfriend between 2003 and 2012, testified that she looked at defendant's cellphone on October 4, 2012, after retrieving it from his work briefcase. Del Pilar retrieved the cellphone after her daughter, J.S., told her that defendant would take pictures and

_____

[1] In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon the entry of a separate written order.

videos of her. Upon examining the cellphone, Del Pilar found pictures of J.S. without clothes on and videos of defendant performing various sex acts on her. She called 911 and was told to come to the police station with her daughter. Del Pilar did so and left defendant's cellphone with the police. No police officer turned the cellphone on in Del Pilar's presence.

¶ 7    Chicago Police Department (CPD) Detective Manuel De La Torre testified that he spoke with J.S. and Del Pilar on October 10, 2012. Del Pilar told De La Torre that she went to the police department and asked for advice, and she was told to bring J.S. with her and make a report. But she was not told to get defendant's cellphone and bring it with her. De La Torre testified that he obtained a search warrant for the phone "on or after October 5, 2012." The State then, prompting De La Torre with the actual cellphone, asked him, "And is this the cellphone that you recovered from CPD inventory after obtaining a search warrant on October 5, 2012?" and De La Torre responded, "Yes." De La Torre further testified that he brought the cellphone to the Regional Computer Forensics Lab (RCFL) on an unspecified date to be forensically examined and that he never turned the phone on himself. The trial court granted the State's motion for a directed finding and denied the motion to suppress evidence.

¶ 8    Defendant's case proceeded to a bench trial on February 19, 2016. J.S., who was 14 years old at the time of trial, testified that she lived with defendant between the ages of four and eleven. Her earliest memory of defendant's abuse was of defendant touching her chest under her shirt at the age of four. When she was seven years old, the defendant began touching her other places, including her vagina. The abuse eventually progressed to defendant penetrating her vagina with his penis, which defendant sometimes filmed and would later show to J.S. Small excerpts from sexually explicit videos were played at trial, and J.S. confirmed that each video accurately depicted

what defendant had done to her between the ages of four and eleven. Defendant's face was visible in almost all of the videos. Del Pilar testified similarly to her testimony at the motion to suppress evidence, except that she claimed the 911 operator "said I had to take my daughter and take the evidence and that's what I did." The trial court found defendant guilty on every count and on appeal, we affirmed defendant's conviction with the one exception noted above.

¶ 9        On August 19, 2020, defendant filed a *pro se* petition for postconviction relief. Defendant, citing *Brady v. Maryland*, 373 U.S. 83 (1963), and *Napue v. Illinois*, 360 U.S. 264 (1959), alleged that the State violated his due process rights by failing to disclose exculpatory evidence that impeached De La Torre and by presenting false testimony. Defendant's petition attached a number of documents in support of his claim which were obtained through Freedom of Information Act requests to the Federal Bureau of Investigation (FBI) and the City of Chicago. One document was a letter defendant claims was sent from De La Torre to the RCFL on February 21, 2013, requesting a forensic examination of defendant's cellphone.[2] Defendant also attached a "Request for Service" form for the RCFL, allegedly completed by De La Torre on February 21, 2013.[3] That form contained a question that read, "Has this Evidence been previously viewed and/or accessed by anyone?" The box that read, "No," was checked. The form also noted that the cellphone was locked with a password, but defendant alleged that the cellphone did not have a password while it was in his possession. Subsequent to the cellphone being delivered to the RCFL, on April 23, 2013, the RCFL sought the FBI's assistance because "an application called application protection is

---

[2] The letter is on CPD letterhead, but the name of the requesting detective is redacted.
[3] The names on this form are also redacted.

encountered," which "protects the settings and other parts of the phone making it unable to be processed."

¶ 10 Defendant also attached the search warrant that was issued for defendant's cellphone on December 7, 2012, not October 5, 2012, and a "Chain of Custody" log for defendant's cellphone. The log showed that defendant's cellphone was checked out by De La Torre on December 5, 2012, two days before the search warrant was issued, and there are no further entries until almost three years later on November 5, 2015. Additionally, defendant attached a complaint for a search warrant completed by De La Torre which sought authorization to search additional digital storage devices found by Del Pilar in her home. That December 7, 2012, complaint stated that a December 6, 2012, warrant to search defendant's cellphone was approved, and that a subsequent search of the cellphone revealed images of J.S. and defendant engaged in sexual acts. The complaint did not state when the cellphone was searched or who did so. Finally, defendant attached a copy of a portion of a report completed by De La Torre on February 4, 2013, approximately three weeks before the request to RCFL was made, which noted that defendant's cellphone was searched pursuant to a warrant, though it, too, did not specify when the cellphone was searched or who did so.

¶ 11 Based on these documents, defendant claimed that De La Torre perjured himself at the hearing on the motion to suppress evidence when he claimed that he had never turned the cellphone on prior to sending it to the RCFL, and that the State wrongfully suppressed the information in these documents. Defendant further alleged that if these documents had been produced, the outcome of his motion to suppress would have been different. Defendant also alleged that trial counsel provided ineffective assistance for a number of reasons including, but not limited to, that

trial counsel failed to perform a reasonable investigation, failed to call certain witnesses, and failed to argue that defendant's convictions violated the principle of one act, one crime. Defendant also alleged the ineffectiveness of appellate counsel for failing to raise some of trial counsel's errors on direct appeal.

¶ 12    On October 29, 2020, the trial court dismissed defendant's petition as frivolous and patently without merit. This appeal followed.

¶ 13                                    II. ANALYSIS

¶ 14    The Act provides a mechanism by which a defendant may raise a collateral attack against his or her conviction based on a claim of actual innocence or where there was a substantial denial of his or her rights under the Constitution of the United States, the State of Illinois, or both. 725 ILCS 5/122-1 *et seq.* (West 2020). The purpose of postconviction proceedings is to allow inquiry into constitutional issues involved in the original conviction and sentence that have not been, and could not have been, adjudicated previously on appeal. *People v. Buffer*, 2019 IL 122327, ¶ 12. Review of the trial court's dismissal of a postconviction petition is *de novo*, meaning we afford no deference to the trial court's decision. *Buffer*, 2019 IL 122327, ¶ 12; *People v. Randall*, 2016 IL App (1st) 143371, ¶ 44.

¶ 15    The Act sets out a three-stage process for the adjudication of postconviction petitions. *Id.* at ¶ 45. At the first stage, the trial court is only required to determine whether a petition is "frivolous or patently without merit." 725 ILCS 5/122-2.1(a)(2) (West 2020); *Buffer*, 2019 IL 122327 at ¶ 45. A petition is frivolous or patently without merit when it has no arguable basis in law or in fact. *People v. Hodges*, 234 Ill. 2d 1, 16 (2009). A petition which lacks an arguable basis either in law or in fact is one which is based on an indisputably meritless legal theory or a fanciful

factual allegation. *Id.* An example of an indisputably meritless legal theory is one which is completely contradicted by the record. *Id.* Fanciful factual allegations include those which are fantastic or delusional. *Id.* at 17. All well-pleaded facts in the petition are construed as true unless affirmatively rebutted by the record. *People v. Thomas*, 2014 IL App (2d) 121001, ¶ 47

¶ 16 A first-stage petition does not have to demonstrate or prove a constitutional violation. *People v. Tate*, 2012 IL 112214, ¶ 19. A *pro se* petitioner is not required to allege facts supporting all elements of a constitutional claim. *Thomas*, 2014 IL App (2d) 121001, ¶ 48. Because a *pro se* petitioner will likely be unaware of the precise legal basis for his claim, the threshold for survival is low, and a *pro se* petitioner need only allege enough facts to make out a claim that is arguably constitutional for purposes of invoking the Act. *Id*. However, the petition must clearly set forth the respects in which petitioner's constitutional rights were violated. *Id*. Petitions filed *pro se* must be given a liberal construction and are to be viewed with a lenient eye, allowing borderline cases to proceed. *Id.* But liberal construction does not mean that we distort reality. *Id.* To survive the first stage, a petition shall attach "affidavits, records, or other evidence supporting its allegations or shall state why the same are not attached." 725 ILCS 5/122-2 (West 2020). Generally, the failure to attach the necessary "affidavits, records, or other evidence," or explain their absence, is fatal to a postconviction petition and justifies its dismissal at the first stage. *People v. Matthews*, 2022 IL App (4th) 210752, ¶ 63.

¶ 17 On appeal, defendant has abandoned many of the claims contained in his *pro se* petition and instead asserts that he stated the gist of a constitutional claim for four issues only: (1) the State violated his due process rights pursuant to *Brady* and *Napue*; (2) assuming trial counsel possessed the purported *Brady*/*Napue* materials, trial counsel was ineffective for failing to use them; (3) trial

counsel was ineffective for failing to argue that the delay in searching defendant's phone was unreasonable; and (4) trial counsel was ineffective for failing to introduce evidence that defendant did not purchase the cellphone in question until 2010. We note that the second and third of these four claims do not appear to be contained in defendant's petition. Nevertheless, given our holding regarding the first issue, we need not address these other issues as we believe defendant has met the exceptionally low hurdle at the first stage. *See People v. Rivera*, 198 Ill. 2d 364, 371 (2001) (the Act does not contemplate dismissal of claims, but rather petitions, and if a defendant states the gist of a constitutional claim, the entire petition must be docketed for second-stage proceedings).

¶ 18                                      A. *Brady/Napue*

¶ 19    Defendant's first argument is that he presented the gist of a constitutional claim because documents he obtained reveal that De La Torre lied when he testified that he never turned on defendant's phone prior to submitting the phone to the RCFL, and that if these documents were not suppressed, De La Torre's credibility could have been impeached at the hearing on the motion to suppress.

¶ 20    The Due Process Clause of the Fourteenth Amendment obligates the State to tender evidence favorable to a defendant so long as the evidence is material to guilt or punishment, irrespective of the good or bad faith of the prosecution. *Brady*, 373 U.S. at 87. The duty to disclose this favorable information exists even absent a request for it from the defendant. *United States v. Agurs*, 427 U.S. 97, 107 (1976). The State is also obligated to disclose impeachment evidence and evidence known only to police investigators and not the prosecutor. *Giglio v. United States*, 405 U.S. 150, 154 (1972); *Kyles v. Whitley*, 514 U.S. 419, 438 (1995). To establish a *Brady* violation,

a defendant must demonstrate that the evidence at issue: (1) was favorable to the defendant; (2) was suppressed by the State; and (3) resulted in prejudice to the defendant. *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999). The prejudice prong requires a defendant to show that the likelihood of a different result is great enough to undermine confidence in the outcome of the trial. *Smith v. Cain*, 565 U.S. 73, 75-76 (2012).

¶ 21    Similarly, the Due Process Clause also forbids a conviction obtained through evidence which the State knows to be false. *Napue*, 360 U.S. at 269. Under this standard, the conviction must be reversed if there is "any reasonable likelihood that the false testimony could have affected the judgment of the jury." *People v. Lucas*, 203 Ill. 2d 410, 422 (2002). This standard is equivalent to the harmless error standard and applies even if the State did not elicit the false testimony, but left it to go uncorrected. *Id.*

¶ 22    Of course, at this stage, defendant need not conclusively establish a due process violation pursuant to *Brady* or *Napue*, but instead must only allege facts that make out a claim that is arguably constitutional. *Thomas*, 2014 IL App (2d) 121001, ¶ 48.  Indeed, the bar at the first stage is so low that a defendant need not even set forth a claim in its entirety or include legal arguments or citations to legal authority. *People v. Edwards*, 197 Ill. 2d 239, 244 (2001).

¶ 23                              B. Lack of an Affidavit from Trial Counsel

¶ 24    The State first argues that defendant's petition cannot survive the first stage because defendant has not attached an affidavit from trial counsel averring that none of these purportedly suppressed documents were ever produced during discovery. While the Act requires defendants to attach "affidavits, records, or other evidence," supporting the petition's allegations, or state why the same are not attached, 725 ILCS 5/122-2 (West 2020), the purpose of this requirement is not

to require defendant to prove every element of his claim at the first stage. Instead, the purpose is to determine if defendant's claims are capable of objective or independent corroboration. *People v. Reed*, 2014 IL App (1st) 122610, ¶ 40. Defendant's petition identified and attached documents that he alleged were suppressed; those facts do not exist solely in his head, incapable of substantiation. Thus, the question of whether these documents were ever produced to defense counsel is one that is capable of independent corroboration. Additionally, when a first-stage petition alleges the ineffective assistance of counsel, as defendant did here alongside his *Brady*/*Napue* claims, the "difficulty or impossibility of obtaining such an affidavit [from trial counsel] is self-apparent." *People v. Hall*, 217 Ill. 2d 324, 333-34 (2005) (*quoting People v. Williams*, 47 Ill. 2d 1, 4 (1970)). Therefore, we do not find that the failure to include an affidavit from trial counsel is fatal here.

¶ 25                        C. *Res Judicata*/Forfeiture

¶ 26    The State additionally argues that this claim is barred by the doctrine of *res judicata* because defendant already raised this claim on his direct appeal or, alternatively, that defendant forfeited this argument by failing to raise it on direct appeal. We disagree.

¶ 27    On direct appeal, defendant argued that he received ineffective assistance of counsel because trial counsel should have pursued a motion to reconsider the motion to suppress evidence ruling after Del Pilar testified that the 911 operator told her "to bring the evidence to the police station." *Oliveros*, 2019 IL App (1st) 161096-U, ¶ 37. We held that the record clearly reflected that Del Pilar was not acting as an agent of the State, and therefore trial counsel was not ineffective by failing to make a motion to reconsider the suppression ruling. *Oliveros*, 2019 IL App (1st) 161096-U, ¶ 40. The issue now before us is plainly different with distinct facts. The direct appeal

argument was grounded in ineffective assistance of counsel, while defendant's petition puts forth a *Brady*/*Napue* due process violation. The claim is also based on information that did not appear in the record on direct appeal, and for that reason, it could not have been raised on direct appeal.

¶ 28                                     D. Gist of a Constitutional Claim

¶ 29     The question, then, is whether defendant's petition sets out a claim that is arguably constitutional. If we take defendant's petition at face value as we are required to do, except where contradicted by the record, it paints the following picture. De La Torre testified at the motion to suppress evidence hearing that he obtained a search warrant, confusingly, both "on or after October 5, 2012," and on October 5, 2012. The search warrant itself, appended to defendant's petition, disagrees with that accounting. Handwriting near the top of the search warrant appears to say "ASA" with a redacted name, followed by "12/6/2012 @ 1325." The authorizing judge's signature at the bottom, in different handwriting, is dated "12-7-12 @ 12:45 p.m." De La Torre's subsequent December 7, 2012, complaint for a warrant to search the additional digital storage found by Del Pilar incorrectly stated that the warrant for defendant's cellphone was approved on December 6, 2012. It also stated that, "A search of offender's cellular phone revealed images of J.S. and offender engaged in an act of sexual conduct and/or penetration."

¶ 30     De La Torre's February 4, 2013, report, completed weeks before the cellphone was given to the RCFL, stated that "The alleged phone was viewed pursuant to a search warrant and digital images were retrieved in which victim and alleged offender are seen engaging in sexual acts." But De La Torre insisted at the motion to suppress hearing that he never turned the cellphone on prior to turning it over to the RCFL.

¶ 31    There is a clearly identifiable and arguable claim of prejudice that flows from this. At a minimum, there is an indication that an actual search of the phone took place long before it was sent to the RCFL, while, according to the property logs, De La Torre was in possession of it. This arguably contradicts and impeaches his testimony at the hearing that he never turned the cellphone on prior to turning it over to the RCFL. Defendant's exhibits also suggest that De La Torre's testimony about when the search warrant was issued was also vulnerable to impeachment. Indeed, defendant's exhibits raise the specter that the search of the cellphone may have actually taken place prior to the warrant's issuance. At a minimum, these irregularities and inconsistencies would have permitted an argument that De La Torre was not credible, and perhaps, an argument that a warrantless search of the cellphone took place.

¶ 32    In its brief, the State offers that De La Torre "may have also been mistaken or misspoke when he said he did not open the cellphone before dropping it at the RCFL." While it is certainly a possibility that De La Torre's testimony contained nothing more than innocent mistakes, it is not for us to weigh credibility or perform fact-finding about De La Torre's motives or intent at this stage. *People v. Morales*, 2019 IL App (1st) 160225, ¶ 26. Furthermore, given that multiple documents created by De La Torre state unequivocally that the cellphone was searched, and that sexually explicit materials were recovered, this is not simply a question of whether De La Torre forgot whether he turned the cellphone on. Based on his own writings, he knew the cellphone had been searched long before it went to the RCFL. Therefore, the issue implicated by defendant's exhibits is when the phone was first searched by law enforcement.

¶ 33    The State further suggests that "it is also possible that it was another officer who did so [searched the phone] pursuant to the search warrant so that the detective was correct in his answer

that he did not open the phone." This is purely speculative, but it also does the opposite of dispelling the potential for prejudice. De La Torre's references to the search of the cellphone in his report and the December 7, 2012, complaint for a warrant for the additional digital storage contained no details about who searched defendant's cellphone and when, despite the fact that his report contained many other chronological specifics of the investigation including names, dates, and even times. But the custody log defendant produced showed that no one but De La Torre was in possession of defendant's cellphone at all relevant times on or after December 7, 2012, when the search warrant was approved. The State now suggests that maybe some other unknown CPD officer had possession of and searched defendant's cellphone at an unknown date and time, apparently unbeknownst to the detective tasked with investigating the case. If that were so, it would only support the arguable nature of defendant's claim that information relevant to the search of defendant's cellphone was never tendered.

¶ 34    At the first stage, we are not required, nor permitted, to weigh evidence or contemplate the likelihood of whether defendant can prove all the elements of his claims. We need only decide whether it is *arguable* that the potential impeachment of De La Torre could have impacted the outcome of the motion to suppress, and thus the rest of the trial, under either the *Brady* or *Napue* standard. The answer is yes, and that is all that is required at the first stage.

¶ 35    The first-stage review is meant to screen out those petitions that are without legal substance or obviously without merit. *Tate*, 2012 IL 112214, ¶ 9. But most first-stage petitions, like the one in this case, are drafted by *pro se* defendants who lack the guiding hand of counsel, and thus the threshold for survival is a low one. *Id.* Whether defendant can make the necessary showings to survive the second stage and beyond is a question for another day that we need not and cannot

address. For now, it is enough to say that he has articulated the mere gist of a constitutional claim and is entitled to proceed to the second stage with the appointment of counsel.

¶ 36                                                    III. CONCLUSION

¶ 37     For the foregoing reasons, we reverse the judgment of the trial court and remand for second-stage proceedings and the appointment of counsel.

¶ 38     Reversed and remanded.